311 So.2d 74 (1975)
Edgar CLAYTON, Plaintiff and Appellant,
v.
Elmer LANGSTON, Defendant and Appellee.
No. 4922.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1975.
Rehearing Denied May 1, 1975.
*75 Mansour & Lauve, by Alfred A. Mansour and Michael H. Davis, Alexandria, for plaintiff-appellant.
Kaplan & Rivers, by Edward A. Kaplan, Alexandria, for plaintiff-appellant.
Lloyd G. Teekell, Alexandria, for defendant-appellee.
Before FRUGE, HOOD and MILLER, JJ.
FRUGE, Judge.
This is a petitory action. The plaintiff, Edgar Clayton, claims ownership of a 15/16th interest in approximately 13 acres of land by inheritance from his mother in 1933 and by subsequent purchases from his father, George L. Clayton, and from heirs of his mother. The plaintiff alleges that defendant is not in possession, but that defendant claims ownership by a chain of title originating with a forged and/or fraudulent deed from George L. Clayton and other members of the Clayton family to Clifton Harper in 1947.
The defendant answered, alleging that he is in possession of the property. He *76 also alleged ownership, both by recorded title and by the acquisitive prescription of ten years, but he did not pray for recognition of his ownership. He prayed only that plaintiff's demands be rejected.
The district judge held that since the only portion of the title that is in dispute is that beginning with the alleged forged or fraudulent sale from George L. Clayton, et al. to Clifton Harper in 1947, it is not necessary to decide the issue of possession "in deciding which party has superior title." The judge then went on to hold that the 1947 sale from the Claytons to Clifton Harper, defendant's ancestor in title, is invalid because some of the property was fraudulently misrepresented or changed. Nevertheless, the district court held that defendant acquired the property in good faith in 1948 from Clifton Harper and Edward G. Windham by deeds translative of ownership and that he owns the property by the acquisitive prescription of 10 years. Judgment was rendered rejecting the demands of the plaintiff and recognizing defendant as owner. Plaintiff appealed.
At the outset, we cannot agree with the district judge that the issue of possession is immaterial. The petitory action is one brought by a person who claims ownership, but who is not in possession, against a defendant who is in possession or who claims ownership thereof adversely, LSA-C.C.P. Article 3651. In every petitory action, it is necessary to determine whether the defendant is or is not in possession, because that fact determines the burden of proof to be imposed on the plaintiff. LSA-C.C.P. Article 3653 provides:
"To obtain a judgment recognizing his ownership of the immovable property or real right, the plaintiff in a petitory action shall:
"(1) Make out his title thereto, if the court finds that the defendant is in possession thereof; or
"(2) Prove a better title thereto than the defendant, if the court finds that the latter is not in possession thereof."
Under LSA-C.C.P. Article 3657, which prohibits the cumulation of the possessory and petitory actions, Comment (a) explains the reason is to keep the trial of the issues of possession and ownership as separate as possible, and to encourage the determination of possession before the petitory action is considered.
Therefore, the first issue that must be decided in the present case is whether defendant is in possession. The evidence shows that Langston acquired the property in dispute by separate deeds from Clifton Harper and from Edward G. Windham on December 27, 1948. Langston testified he assumed Harper and Windham had good titles. He did not examine their titles.
Langston testified that when he bought the property the boundaries were marked by painted trees. The paint was becoming dim, so he went all the way around and repainted the boundaries. Within about one year after he purchased the property, Langston started to deaden the hardwood trees, in preparation for planting slash pine seedlings. In 1950 he planted 1,000 pine seedlings per acre, a total of approximately 10,000 seedlings, most of them placed six feet apart in rows approximately eight feet apart, in accordance with forest management practices. In two or three years, these seedlings had grown and the rows were clearly distinguishable from the surrounding tracts of land where no slash pine trees had been planted and other varieties of trees were growing.
When the trees were 12 or 13 years old, he thinned them for the first time and sold the pulpwood to his brother. In 1967 or 1968 he thinned the trees again and sold the pulpwood to the Calcasieu Paper Company.
Additionally, the record shows that Langston paid taxes on the property from *77 the time he purchased it in 1948 down to the present.
The first time that defendant became aware of any adverse claim to the ownership of the property was in 1966, when two of the Clayton heirs placed a "No Trespassing" sign and a wire barrier on the road into the property used by Langston for access. On this occasion in 1966, Langston consulted an attorney who wrote a letter to the Clayton heirs demanding the removal of the sign and the obstruction. Soon thereafter, the obstruction and the "No Trespassing" sign were removed and defendant continued to go on the property to care for his pine trees. On May 21, 1971, he had the property resurveyed and the boundary lines repainted.
This suit was filed on July 26, 1971. The question is whether Langston had been in possession of the property for at least a year on that date. LSA-C.C.P. Article 3660 provides in pertinent part:
"A person is in possession of immovable property or of a real right, within the intendment of the articles of this Chapter, when he has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for himself, whether in good or bad faith, or even as a usurper."
Jurisprudence has established the rule that corporeal possession of a tract of land is governed by the use for which the land is destined, Boudreax v. Olin Industries, 232 La. 405, 94 So.2d 417 (1957); Smith v. Southern Kraft Corporation, 202 La. 1019, 13 So.2d 335 (1943); Turner v. Denkmann Lumber Company, 244 So.2d 868 (La.App.1st Cir. 1971). The cited cases, all of which dealt with timberland, hold that where the boundary lines of the property have been marked, trees planted and maintained, timber sold, access to the property maintained and other such visible acts incidental to growing and harvesting timber on a tract of land have been performed over a substantial period of time, the property has been corporeally possessed. Applying these rules to the present case, it is clear that Langston exercised corporeal possession soon after he purchased this property in 1948. Thereafter, this possession was continued by other acts of both corporeal and civil possession down to the date this suit was filed.
Although the trial judge stated in his written reasons that he did not find it necessary to determine whether defendant possessed the property at the time this suit was filed, he nevertheless found as a fact that defendant had established a title by the acquisitive prescription of 10 years. This necessarily means the trial judge found as a fact that Langston possessed the property. This finding of fact by the trial judge supports our conclusion that defendant is in possession.
In this suit there was a common author from whom both plaintiff and defendant trace their claim to ownership by record title. In Deselle v. Bonnette, 251 So.2d 68 (La.App. 3rd Cir. 1971), there was also a common author, and we stated and followed the established rule that "where both plaintiff and defendant trace their titles to a common author, plaintiff is not required to prove his title beyond the common author." The denial of writs by the Supreme Court in Deselle supports this interpretation.
In the present case, the proof of plaintiff's chain of record title starts with a deed in 1922 from W. M. Cady Lumber Company, Inc. to George L. Clayton, husband of Minnie Hollins, these being the parents of the plaintiff, Edgar Clayton. Mrs. Minnie Hollins Clayton died in 1933, leaving as her heirs eight children. Edgar Clayton later acquired from his brother, George A. Clayton, his father's ½ interest in the property, and from his brothers and sisters an additional 7/16th interest, which makes the total of 15/16th that he claims.
*78 The defendant possessor, Elmer Langston, also first claims ownership by recorded title. In 1948 he purchased the subject property by separate deeds from Clifton Harper and from Edward G. Windham. Windham had acquired his interest in the property from Clifton Harper in 1947. Clifton Harper allegedly acquired the property in 1947 under a deed allegedly signed by George L. Clayton and the heirs of Mrs. Minnie Hollins Clayton. This 1947 deed from the Claytons to Clifton Harper is that which plaintiff contends was forged and/or fraudulent.
Therefore, insofar as their claims to ownership by recorded titles are concerned, both plaintiff and defendant trace their titles to a common author, George L. Clayton, husband of Minnie Hollins. Under our interpretation of the law, as set out in Deselle v. Bonnette, supra, the plaintiff, Edgar Clayton, did not have the burden of proving his title beyond the common author. Plaintiff proved a perfect record title to a 15/16th interest back to the common authors, George L. Clayton and his wife, Minnie Hollins Clayton. The burden then shifted to the defendant, Elmer Langston, to prove his title.
Defendant's claim to ownership by recorded chain of title back to George L. Clayton and his wife, Minnie Hollins Clayton, is delineated above. Plaintiff attacks defendant's record title on the grounds that the 1947 deed from George L. Clayton and the heirs of Mrs. Minnie Hollins Clayton is void because of forgery and/or fraud. Mr. George L. Clayton testified that he signed his "X" mark to the deed, but that he could not read or write, and it was fraudulently represented to him by Clifton Harper that the description in the deed covered property other than that at issue in the present case. Concerning the signatures of the heirs of Mrs. Minnie Hollins Clayton, the evidence supports the finding of fact by the trial judge that at least a majority of these signatures were forged. We conclude that there is clearly a reasonable evidentiary basis to support the finding of fact by the trial judge that the 1947 deed from the Claytons to Clifton Harper is void for fraud and forgery as to at least a majority of the vendors. Therefore, the defendant, Elmer Langston, has failed to prove a valid record title back to the common author.
However, in addition to claiming ownership by record title, the defendant claims to own the property by the acquisitive prescription of 10 years under LSA-C.C. Article 3479, which reads as follows:
"Art. 3479. To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
1. Good faith on the part of the possessor.
2. A title which shall be legal, and sufficient to transfer the property.
3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
4. And finally an object which may be acquired by prescription."
The district judge held, and we agree, that defendant proved the four requisite conditions of the acquisitive prescription of 10 years. The 1948 deeds from Clifton Harper and Edward G. Windham to Elmer Langston correctly describe the property and are sufficient to transfer ownership. As stated above, when Langston purchased the property in 1948, he reasonably believed in good faith that Harper and Windham had good title. He did not have their titles examined. By 1950 Langston had taken corporeal possession of the property by repainting the trees which marked the boundaries, by deadening the hardwood trees and by planting approximately 10,000 slash pine seedlings. Under the evidence which is outlined in detail above, it is clear that by 1950 Langston established *79 corporeal possession of the property, and this possession was continued by further acts of both corporeal and civil possession down to the time this lawsuit was filed. Under the express provisions of LSA-C.C. Article 3481, "Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it." Also LSA-C.C. Article 3482 provides that "It is sufficient if the possession has commenced in good faith; and if the possession should afterwards be held in bad faith, that shall not prevent the prescription."
We conclude the trial judge correctly found the defendant Langston sustained his burden of proving ownership by the acquisitive prescription of 10 years.
The next question is whether, in the posture of the pleadings in the present case, we should simply reject the demand of the plaintiff to be recognized as owner and recognize defendant's right to possession, or whether we should go further, as the trial judge did, and recognize defendant's ownership by the acquisitive prescription of 10 years. As stated above, the plaintiff filed a petitory action claiming ownership by a recorded title and alleging that defendant was not in possession, but that defendant claimed ownership by a chain of title originating with a forged and fraudulent deed in 1947. The defendant answered, alleging that he is in possession. Further answering, defendant alleged that he owned the property by a recorded chain of title back to George L. Clayton, the common author. Additionally, defendant's answer alleges ownership by the acquisitive prescription of 10 years. However, defendant prayed only that plaintiff's demands be rejected. Defendant did not pray that his ownership be recognized.
Although the plaintiff may not cumulate the petitory and the possessory actions in the same suit nor plead them in the alternative, LSA-C.C.P. Article 3657, there is no rule prohibiting the defendant in a petitory action from alleging and praying for recognition of both possession and ownership. Comment (a) under Article 3657 states that the rule prohibiting the plaintiff from cumulating the petitory and the possessory action is "to keep the trial of the issues of possession and ownership as separate as possible, and to encourage the determination of the issue of possession before the institution of the petitory action." Of course, the purpose of deciding first the issue of possession is to determine the burden of proof to be imposed on the plaintiff in the petitory action. But after the issue of possession has been decided, thereby determining plaintiff's burden of proof, possession has played its role, and there is no reason to prohibit the defendant from seeking recognition of both possession and ownership. Actually, the defendant in a petitory action usually seeks recognition of possession and ownership. See Motty v. Broussard, 201 So.2d 293 (La.App. 3rd Cir. 1967) and the cases cited therein; and the Comment, Real Actions to Determine Ownership or Possession Under the Proposed Louisiana Code of Civil Procedure, 20 La.L.Rev. 92 (1959).
The defendant in this petitory action alleged and proved possession and ownership. Although he had the right to pray for recognition of his ownership, he did not do so. He prayed only that plaintiff's claim to ownership be rejected. The question then is whether we should refuse to recognize defendant's ownership on the technical grounds that he has failed to pray for it.
In the absence of specific contrary rules regarding real actions, the general rules applicable in ordinary civil proceedings should be followed. LSA-C.C.P. Article 862 provides:
"Except as provided in Article 1703 (which has to do with judgments by default), a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party *80 has not demanded such relief in his pleadings and the latter contained no prayer for general and equitable relief."
The Official Revisions Comments under this article state that its purposes are to eliminate the necessity for the prayer for general and equitable relief, and, even more important, to suppress the technical "theory of the case" doctrine, under which the litigant was limited strictly to the legal theory which he alleged and to the relief for which he prayed. See the general discussion in Fleming James, Jr., Civil Procedure, Section 2.10; and Yiannopoulos, Civil Law of Property, Section 148 at page 454.
The following cases have construed LSA-C.C.P. Article 862 as permitting relief alleged and proved but not prayed for. In Desormeaux v. Inexco Oil Company, 298 So.2d 897 (La.App. 3rd Cir. 1974), writ refused, the owner of an oil lease was required to account to the landowner for production which was proved but was beyond the relief prayed for. In Cambrice v. Fern Supply Company, Inc., 285 So.2d 863 (La.App. 4th Cir. 1973) the plaintiff prayed for only $1,000 in future medical expense, but was awarded the proven amount of $1,650. In Gibbs v. Giering, 183 So.2d 459 (La.App. 3rd Cir. 1966) plaintiff prayed only for a money judgment, but the court held under Article 862 that plaintiff was entitled to the additional relief of an assignment which was factually alleged and proved but not prayed for.
We conclude that Article 862 and the above cited cases construing it are applicable here. We are not departing from the requirement for fact pleading which is retained in our procedure. Here, the defendant has alleged and proved facts showing that he owns the property. But, he has failed to pray for recognition of that ownership, a relief to which he is clearly entitled. We find no special rule of the real actions to prevent granting defendant this relief. To hold otherwise, would mean that if the defendant desires to have his ownership recognized, as against the plaintiff in this suit, he would have to file a separate action of some type, causing needless delay and expense.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.