372 So.2d 1194 (1979)
TENNECO OIL COMPANY
v.
Fred L. HOUSTON et al.
No. 63777.
Supreme Court of Louisiana.
June 25, 1979.
Rehearing Denied July 27, 1979.
Nesib Nader, Shreveport, for defendants-applicants Ellis Harp, Jr., Anether Harp Hall, Dorether Harp, Jimmy Ray Harp.
Robert E. Plummer, Colvin, Hunter, Brown, Plummer & Means, Mansfield, for defendants-respondents Fred L. Houston & Eleanor H. Houston.
DIXON, Justice.
This concursus proceeding was brought by Tenneco Oil Company to determine the ownership of a fourth of the oil and gas royalties under mineral leases. The royalties involved are modest in amount, and are attributable to a forty acre tract of land (SW/4 of SE/4 of Section 14, Township 15 North, Range 13 West) in DeSoto Parish which was unitized with other lands on which the producing well is located.
There was judgment in the district court in favor of Fred L. Houston and Eleanor H. Houston, which was affirmed by the Court of Appeal, 364 So.2d 1056 (La.App.1978). The Court of Appeal ruled that since the Houstons were the possessors of the forty acre tract, the Harp group (the only one of *1195 three groups of adverse claimants who preserved their rights by appeal and by application for writs to this court) were required, under C.C.P. 3654,[1] to make out their title thereto.
The Court of Appeal further found that all the claimants traced their title back to a common author, Will Oliver. Relying on Pure Oil Co. v. Skinner, 294 So.2d 797 (La. 1974), the Court of Appeal went on to hold that "proof of a more ancient title derived from a common author in title is not proof of ownership, that is, title good against the world, but merely proof of better title." 364 So.2d at 1058.
We granted writs to consider the correctness of this holding.
An examination of the record, however, does not disclose a common author. The Harp group have failed to make out any title whatsoever.
Fred L. Houston and his wife Eleanor H. Houston bought the forty acres involved here, after having the title examined, by two purchases: the first, dated April 2, 1971, was from Will Oliver and conveyed a thirty acre tract; the second, on April 15, 1971, was from Jim and his wife Irene Armstrong Phillips, for a ten acre tract. The Phillips had bought their ten acres from Will Oliver the preceding February 10, 1971. At the time of the trial, Houston and his wife testified that they paid $7200 for the land and had occupied it for the past six and one-half years, farming, planting a pecan orchard and improving the buildings, an endeavor in which they had spent over $17,000. There was no evidence of possession by any other person.
The Harp group claimed that they are the children of Lula Mae Harp, one of the children born to Everlina Scott and Andrew Green. Green died in 1916. Everlina Scott died January 25, 1968, and had been married to Will Oliver twice, in 1947 and in 1961.
The judgment of possession in the succession of Everlina Oliver recognized one-half interest in the forty acres involved here to be in Will Oliver, and placed Lula Mae Harp and Mary E. Jones in possession of the other undivided half of the forty acres. Mary Jones, in September of 1968, sold her one-fourth interest in the forty acres to Will Oliver, widower of Everlina. On November 20, 1970, Echo E. Ross, nee King, the wife of Preston Ross, sold her one-fourth interest in the forty acre tract to Will Oliver, reciting in the deed that she was the sole legitimate heir of Lula Mae Harp, her deceased mother. Lula Mae Harp had died February 4, 1969.
Echo Elizabeth Ross was born in 1927 to Lula Mae Harp and her husband Granderson King, who had been married February 18, 1926, and who were never divorced. (Echo Elizabeth had been raised by Everlina and Will Oliver). Granderson King separated (non-judicially) from Lula Mae shortly afterwards, moved to Texas, died in Houston and was buried there between 1973 and 1975.
Lula Mae Harp, although never divorced from Granderson King, married Ellis Harp March 6, 1957. The members of the Harp group are her children, born to her and Ellis between 1937 and 1952, but are illegitimate because of the undissolved marriage between Lula Mae and Granderson King. Under C.C. 918, if a natural mother has lawful children, the rights of the natural children are reduced to alimony (like other illegitimates. C.C. 920).[2] See *1196 Succession of Robins, 349 So.2d 276 (La. 1977); Daigle, All in the Family: Equal Protection and the Illegitimate Child in Louisiana Succession Law, 38 La.L.Rev. 189 (1977). Therefore, the Harp group, children of Lula Mae Harp, but not the children of Granderson King, have exhibited no title to the mineral rights in dispute.
Since the legitimate children of Lula Mae King Harp inherited from her to the exclusion of either natural or illegitimate children, the Harp group have exhibited no title, and therefore no common author.
The judgments of the courts below are affirmed and reinstated, and costs are to be deducted from funds deposited by plaintiff.
SUMMERS, C. J., concurs. I would reverse Pure Oil v. Skinner, 294 So.2d 797.
TATE, J., dissents and assigns reasons.
CALOGERO, J., dissents for reasons assigned by Tate, J.
DENNIS, J., dissents for reasons assigned by Tate, J.
TATE, Justice, dissenting.
I respectfully dissent.
The Harp claimants are excluded from the title on the ground that they are illegitimate children of Lula Mae Harp, an heir to the ownership of the property.
Mrs. Harp had been married to King in 1926 and had never been divorced. After King moved away following the birth of a child, the Harp claimants were born to Lula Mae as a result of her union (eventually blessed by marriage in 1957) with Ellis Harp.
True, the biological father of these children was Harp (not King, Lula Mae's only lawful husband). Nevertheless, under well-settled principles of the Civil Code of 1870, in effect at all pertinent times (the statutory scheme was amended in 1976), the Harp claimants are considered as legitimate children of Lula Mae Harp and her lawful husband, King, for purposes of inheritance from their estates. Under no prior decisional law, have they been disinherited as merely illegitimate children of their mother.
Article 184 of the Louisiana Civil Code of 1870 provided: "The law considers the husband of the mother as the father of all children conceived during the marriage."
Under the jurisprudence interpreting this article, a child born during a lawful marriage is conclusively presumed to be an issue of the marriage"the husband of the mother is presumed to be the father of her children", unless within a short statutory period an action is successfully brought by the father or his heirs to disavow its legitimacy on the narrowly limited grounds permitted.
See: Civil Code Articles 191, 192 (1870); Tannehill v. Tannehill, 261 La. 933, 261 So.2d 619 (1972); Williams v. Williams, 230 La. 1, 87 So.2d 707 (1956); Feazel v. Feazel, 222 La. 113, 62 So.2d 119 (1952); Kuhlman v. Kuhlman, 137 La. 263, 68 So. 604 (1915); Succession of Saloy, 44 La.Ann. 433, 10 So. 872 (1892).
Under the facts of the majority opinion, the Harp claimants are heirs of an owner of the property. They were never divested of their title by deed or prescription. Therefore, they are entitled to be recognized in their ownership.
The common author in title of the Houstons (possessors) and of the Harps is Will Oliver, who had purchased the property while living in community with his wife Everlina (grandmother of the Harp heirs). The Houstons had purchased the property in April 1971, after Everlina's death, from Will Oliver and some of Everlina's heirs to her undivided one-half interest.
We granted certiorari because the intermediate court had held that proof of title to the common author did not satisfy the requirement that, in a petitory action, the party out of possession (i. e., the Harp heirs) must "make out his title." La.C.Civ.P. art. *1197 3653. Jurisprudentially, we have short-handed this term as a requirement that the party out of possession make out title against the world. Pure Oil Co. v. Skinner, 294 So.2d 797 (La.1974).
However, the jurisprudential interpretations of this provision ("make out his title") in the former Codes of Practice (see, e. g., art. 44, Code of Practice of 1870), have found this requirement to be satisfied when the party out of possession makes out his title to a common ancestor, with the result that the party in possession has no title (i. e., derived from that common ancestor).[1] The present intermediate court therefore was in error, and its holding in this regard should be overruled as contrary to the prior settled jurisprudence.
See, e. g., Voisin v. Luke, 341 So.2d 6 (La.App. 1st Cir. 1976), certiorari denied, and Clayton v. Langston, 311 So.2d 74 (La. App. 3d Cir. 1975).
I respectfully dissent.
NOTES
[1] "When the issue of ownership of immovable property or of a real right is presented in an action for a declaratory judgment, or in a concursus, expropriation, or similar proceeding, or the issue of the ownership of funds deposited in the registry of the court and which belong to the owner of the immovable property or of the real right is so presented, the court shall render judgment in favor of the party:

(1) Who would be entitled to the possession of the immovable property or real right in a possessory action, unless the adverse party makes out his title thereto; or
(2) Who proves better title to the immovable property or real right, when neither party would be entitled to the possession of the immovable property or real right in a possessory action."
[2] Regardless of whether the Harp claimants are considered to be the children of King (their mother's husband), they are illegitimate adulterous children of Lula Mae and the code denies them inheritance. C.C. 920; Marshall v. Smedley, 166 La. 364, 117 So. 323 (1928); Succession of Peyran, 11 La.Ann. 694 (1856); Succession of Riley, 259 So.2d 406 (La.App.1972).
[1] The European codes permit this result by express legislative test. Until the present decision of the intermediate court, our own Louisiana legislative text was so interpreted. To overrule the possible misinterpretation occasioned by the present holding of the intermediate court in this instance, the Louisiana Law Institute has proposed revisory legislation for adoption by the 1979 legislature.