416 So.2d 311 (1982)
L. C. WEAVER, Plaintiff & Appellee,
v.
Jackie Roy HAILEY, et al., Defendants & Appellants.
No. 8702.
Court of Appeal of Louisiana, Third Circuit.
June 1, 1982.
Rehearing Denied July 21, 1982.
*312 Gahagan & Gahagan, M. F. Gahagan, Natchitoches, for plaintiff & appellee.
Watson, Murchison, Crews & Arthur, R. Raymond Arthur, Natchitoches, for defendants & appellants.
Before CULPEPPER, CUTRER, SWIFT, STOKER and DOUCET, JJ.
CULPEPPER, Judge.
This is a petitory action. The plaintiff, L. C. Weaver, claims ownership by record title of one acre of land of which defendants, the Haileys, are in possession. The Haileys filed an answer alleging ownership by the acquisitive prescriptions of 30 years and 10 years of the 40 acres in which plaintiff alleges the one acre in dispute is located. But defendants prayed only that plaintiff's demands be rejected. They did not file a reconventional demand for recognition of their ownership. The district judge recognized the Haileys as the owners of the 40 acres less and except the one acre in dispute, and he recognized the plaintiff, L. C. Weaver, as owner of the one acre. The defendants appealed.
The substantial issues are: (1) Did the plaintiff sustain his burden of proving ownership by record title to the one acre in dispute? (2) Since defendants have not prayed for recognition of their ownership by acquisitive prescription and have not filed a reconventional demand, is the issue of their ownership before us? (3) If the *313 issue of defendants' ownership is before us, have they proved acquisitive prescription of 10 years as to the one acre in dispute?

PLAINTIFF'S EVIDENCE
Plaintiff's proof of his record title consists of the following:
(1) A cash sale from Robert Richard to H. L. Weaver recorded on August 27, 1946 conveying property described as "beginning at a point on the north line of SW ¼ of SW ¼ sec. 26 Tp 12 Rg 7 on the west side of the Creston-Ashland highway and running west 35 yards thence south 70 yards thence east 35 yards to the highway thence north to point of beginning containing one-half acres more or less."
(2) An act of correction from Robert Richard to H. L. Weaver dated and recorded in October of 1980, correcting the description of the 1946 sale to read as follows: "... beginning at a point on the North line of the Southwest Quarter of the Southwest Quarter of Section 26, Township 12 North, Range 7 West, Natchitoches Parish, Louisiana, on the West side of Creston-Ashland Highway; thence run West 35 yards; thence run South 140 yards; thence run East 35 yards to said highway; thence run North 140 yards to the point of beginning."
(3) A cash sale from Herman L. Weaver to L. C. Weaver dated October 30, 1980 and recorded on June 26, 1981 conveying the one acre as described in the October, 1980 act of correction.
L. C. Weaver testified that immediately after his brother, H. L. Weaver, purchased the property in 1946, they organized a club, apparently for the purpose of hunting and fishing on nearby Black Lake, and they built a small club house on the one acre. In 1949 they sold the building and it was moved from the land.
L. C. Weaver also testified that when Mr. E. D. Mallett, defendants' author in title, built the fence around Mallett's property in 1952, the fence included the one acre on which the club house had been located. Weaver admitted that the fence built by Mallett in 1952 was maintained by the Haileys after they purchased their property from Mallett in 1953, and that the fence is still on the same lines.
Herman L. Weaver, who originally purchased the one acre from Robert Richard in 1946, testified that he left the State of Louisiana during the 1950s and returned during the 1960s, at which time he talked to Mr. and Mrs. Lee Roy Hailey about their fence enclosing his one acre. He says he went to see Mrs. Lena Hailey again in 1979 and asked her to move the fence, since it had been there almost 30 years. In 1980, they obtained from Robert Richard the correction deed described above, and Herman sold the property to his brother, L. C. Weaver.
L. C. Weaver testified that during the latter part of 1980 he and Jackie Roy Hailey discussed a lease of the one acre by Weaver to Hailey. Weaver had his attorney draw a written lease, but Hailey, on the advice of his attorney, refused to sign. Jackie Roy Hailey's version of this lease incident is that when he was clearing his land to plant Christmas trees during 1980, he learned that the Weavers were claiming one acre, although he didn't know the location of the one acre, and he decided to try to lease it. However, he was later advised by his attorney not to sign a lease.

DEFENDANTS' EVIDENCE
The defendants have abandoned their claim by the acquisitive prescription of 30 years. They claim ownership by the acquisitive prescription of 10 years based on a sale from Elvin Dale Mallett to Lee Roy Hailey and his wife, Lena V. Hailey, dated April 1, 1953 and recorded on April 23, 1953, conveying the following described property:
"Southwest Quarter of the Southwest Quarter of Section 26, Township 12 North, Range 7 West, less one acre, being 39 acres more or less in Ward 2, Natchitoches Parish, La. with all improvements thereon, including house furnishings and 17 goats;"
*314 In February of 1952, Mr. E. D. Mallett employed Lynn Boyd Weaver to "run the lines" of the SW/4 of the SW/4 of said Section 26. Lynn Boyd Weaver was not a surveyor, but he had experience running lines for lumber companies. He testified that on February 29, 1952 he blazed the lines of the approximately 40 acres. At the trial, Weaver identified a sketch of his field notes, filed in evidence, purporting to show the lines he blazed around the 40 acres. He said he ran the lines from corners marked by iron pipes placed there by a licensed surveyor. During his testimony, Weaver drew on the sketch his estimate of the location of the Ashland-Creston highway, running generally across the north and the east lines of the 40 acres, so as to place approximately 7 acres east of the highway and 32 acres west of the highway. Weaver also said that Mallett did not tell him to exclude one acre, and that he knew nothing about the location of the one acre, so he did not show it in his field notes.
Lynn Weaver also testified that during 1952 Mr. E. D. Mallett built a fence on the lines which he had blazed. Other evidence in the record shows that actually only the 32 acres west of the highway were fenced by Mallett in 1952. The 7 acres east of the highway were not fenced.
Mrs. Lena Hailey Thompson testified that she was married to Lee Roy Hailey when they bought 39 acres from E. D. Mallett in 1953. She stated that at the time of the purchase neither she nor her husband knew that their deed excepted one acre, that before they bought the land Mr. Mallett showed them on the ground the location of the fence around the 32 acres west of the highway and showed them the unfenced 7 acres on the east side of the highway, and stated to them that was the property they were buying. She testified she did not learn until "a year or so" after they purchased the land that H. L. Weaver claimed one acre.
The evidence shows that immediately after Lee Roy Hailey and his wife purchased the land from Mallett in 1953 they moved into the home on the 32 acres and Mrs. Lena Hailey Thompson and her children, defendants in the present suit, have lived there and maintained the fence around the 32 acres ever since.
The evidence also shows that a judgment of recognition and possession in the Succession of Lee Roy Hailey, dated March 25, 1974, recognizes Lena Viola Hailey as the surviving spouse in community, and Jackie Roy Hailey, Raymond Terry Hailey, Mark Lavelle Hailey and Ruth Ann Hailey as the only children of Lee Roy Hailey, deceased, and places them in possession of the property as described in the 1953 deed from Mallett. The defendants in the present suit are Jackie Roy Hailey, Ruth Ann Hailey and Lena Viola Hailey, who apparently purchased the interests of Raymond Terry Hailey and Mark Lavelle Hailey.

DID PLAINTIFF PROVE OWNERSHIP?
The first issue is whether the plaintiff in this petitory action against defendants in possession sustained his burden of proving ownership by record title. This is the first case to reach the appellate courts since the adoption, effective January 1, 1980, of the following articles of our Civil Code on PROTECTION OF OWNERSHIP:
"Art. 531. Proof of ownership of immovable
One who claims the ownership of an immovable against another in possession must prove that he has acquired ownership from a previous owner or by acquisitive prescription. If neither party is in possession, he need only prove a better title.
(Acts 1979, No. 180, § 1, eff. Jan. 1, 1980.)

Comments
(a) One who claims the ownership of an immovable adversely to another in possession has the burden of proof of his claim. When the defendant is in possession of the immovable property, the plaintiff discharges this burden by proving that he has acquired the ownership of the immovable he claims. When the defendant is not in possession, the plaintiff discharges this burden by proving that he has a better title than the defendant. The defendant is in possession when he and his ancestors in title have had corporeal possession for *315 at least one year or civil possession for the same period of time preceded by corporeal possession. See Yiannopoulos, Civil Law Property § 133 (1966).
(b) Article 3653(1) of the Louisiana Code of Civil Procedure declares that the plaintiff in the petitory action, in order to recover, "must make out his title". The word "title" in this article means ownership. A plaintiff in a petitory action thus makes out his title when he proves his ownership of the immovable. Ownership of immovable property may be acquired by an unbroken chain of transfers from a previous owner or by acquisitive prescription. See Pure Oil Co. v. Skinner, 294 So.2d 797 (La.1974); Tenneco Oil Co. v. Houston, 364 So. 1056 (La.App. 2d Cir. 1978). In a sense, proof of acquisition of ownership in one of these manners establishes `a title good against the world'."
"Art. 532. Common author
When the titles of the parties are traced to a common author, he is presumed to be the previous owner.
(Acts 1979, No. 180, § 1, eff. Jan. 1, 1980.)

Comments
(a) The text of Article 3653 of the Louisiana Code of Civil Procedure seems to indicate that when defendant is in possession the plaintiff may not recover upon proof of a more ancient title from a common author because this is not proof of ownership but merely proof of a better title. See Maraist, The Work of the Louisiana Appellate Courts for the 1974-1975 Term, 36 La. L.Rev. 572 (1976); Tenneco Oil Co. v. Houston, 364 So.2d 1055 (La.App. 2d Cir. 1978). Nevertheless, certain courts relying on the comment accompanying Article 3653 of the Louisiana Code of Civil Procedure and the intent of the redactors not to change the prior law, have held that a plaintiff in a petitory action is entitled to judgment recognizing his ownership against a defendant in possession upon proof of a more ancient title from a common ancestor. Article 532 follows this line of jurisprudence. It declares that when the titles of the parties are traced to a common author, he is presumed to be the previous owner. Accordingly, plaintiff may recover against another in possession upon proof that his title is the more ancient from the common ancestor. Of course, the judgment is not res judicata as to third persons."
LSA-C.C.P. article 3653(1), referred to in Comment (b) under Civil Code article 531 above, was amended by Act No. 256 of 1981 as follows:
"Art. 3653. Same; proof of title; Immovable
To obtain a judgment recognizing his ownership of immovable property or real right therein, the plaintiff in a petitory action shall:
(1) Prove that he has acquired ownership from a previous owner or by acquisitive prescription, if the court finds that the defendant is in possession thereof; or
(2) Prove a better title thereto than the defendant, if the court finds that the latter is not in possession thereof.
When the titles of the parties are traced to a common author, he is presumed to be the previous owner.
Amended by Acts 1981, No. 256, § 1.

Comment
The 1981 amendment to this Article does two things: (1) It adds the word "therein" after "real right". See Comment (c) under Art. 3651, supra. (2) It brings the procedural law, relative to proof of ownership of immovables, in line with the substantive law contained in Civil Code Articles 531 and 532."
Before the 1979 amendments to the Civil Code and the 1981 amendment to the Code of Civil Procedure, as set out above, it is clear the controlling jurisprudential rule was that stated in Pure Oil Company v. Skinner, 294 So.2d 797 (La.1974), i.e., that the plaintiff in a petitory action against a defendant in possession must prove ownership good against the world regardless of defendant's lack of title. Under that rule, *316 the plaintiff in the present case has not sustained his burden of proving title good against the world. He has deraigned his title only back to the 1946 sale from Robert Richard to H. L. Weaver. He has not deraigned his title back to the sovereign, nor has he proved title back to a common author, nor has he proved ownership by acquisitive prescription.
The only question is whether the legislature intended to overrule Pure Oil v. Skinner, supra, when it adopted Civil Code articles 531 and 532 in 1979 and amended Code of Civil Procedure article 3653(1) in 1981. We have no difficulty in concluding that the legislature did not intend to overrule Pure Oil Company v. Skinner.
An understanding of the legislative intent in making these changes begins with the difference between the words "ownership" and "title." Ownership is defined in the Civil Code as follows:
"Art. 477. Ownership; content
Ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law.
(Acts 1979, No. 180, § 1, eff. Jan. 1, 1980.)

Comments
(a) This provision is based on Articles 488 and 491 of the Louisiana Civil Code of 1870. It does not change the law."
The word "title" is not defined in our Codes. It is used in different senses. A. N. Yiannopoulos, Louisiana Civil Law Treatise, Vol. 2, Property, 2d Ed., Section 192, at page 518 discusses C.C. article 531 as revised in 1979 and explains the different uses of the word "title":
"The first sentence of Article 531 of the Louisiana Civil Code has the same meaning as Article 3653(1) of the Louisiana Code of Civil Procedure which declares that the plaintiff in the petitory action, in order to recover, must "make out his title",110 if the court finds that the defendant is in possession of the immovable property or of the real right. The word "title" is used in Louisiana legislation and jurisprudence in at least three different senses. It may mean an act translative of ownership, such as a sale, donation, or exchange;111 it may mean an instrument evidencing ownership or another real right, such as a partition or a judgment;112 or it may simply mean ownership of a thing or a valid claim to a real right other than ownership.113 Thus, an act of sale or an act establishing a predial servitude is a title; a judgment recognizing one's ownership or other real right is likewise a title; and the owner of a thing or a person entitled to a real right has title to the thing or to the real right. It is apparent that the word "title" in Article 3653(1) of the Louisiana Code of Civil Procedure means ownership or a valid claim to a real right other than ownership. A plaintiff in a petitory action thus "makes out his title" when he proves his ownership of the immovable property or that he is entitled to the real right he claims.114"
In footnote 111, Prof. Yiannopoulos cites Louisiana Civil Code article 495 of 1870 as an example of the use of the word "title" to mean an act translative of ownership, such as a sale, donation or exchange. The text of article 495 makes it clear that "title" as used there is not the same as "ownership."
"Art. 495. He who has once acquired the ownership of a thing by one title, cannot afterwards acquire it by another title, unless it be to supply a deficiency in the first title.
On the other hand, nothing prevents a thing due to a person, under one title, from being also due to him under another; as for example, when a thing has been sold, and is afterwards bequeathed to the same person by the owner. (As amended by Acts 1871, No. 87)

CC-852."
In 1974, the Louisiana Supreme Court in Pure Oil Company v. Skinner, supra, decided that the word "title" in C.C.P. article 3653(1) meant "ownership." The court held *317 that the plaintiff in a petitory action against a defendant in possession was required to prove a perfect record title back to the sovereign, since he had not proved ownership by acquisitive prescription. No common author was involved. The only missing link in the plaintiff's record title was between the years 1858 and 1874. Chief Justice Summers wrote a strong dissent, joined by Justice Marcus, in which he took the position that the redactors of the Code of Civil Procedure of 1960, and in particular Henry G. McMahon, did not intend the word "title" to mean "ownership." Nevertheless, the majority in Pure Oil v. Skinner held to the contrary.
Following Pure Oil Company v. Skinner, supra, a question arose in the Courts of Appeal as to whether the common author rule was still viable. Clayton v. Langston, 311 So.2d 74 (La.App. 3rd Cir. 1975) held that where both plaintiff and defendant in a petitory action traced their record titles to a common ancestor, this satisfied the Pure Oil v. Skinner requirement of proof of title "good against the world." Tenneco Oil Company v. Houston, 372 So.2d 1194 (La. App. 2d Cir. 1979), affirmed on other grounds, 372 So.2d 1194 (La.1979), held to the contrary that proof of title back to a common author did not satisfy Pure Oil Company v. Skinner. It became clear that legislation was needed to solve the common author problem, and to make it clear that the word "title" in LSA-C.C. article 3653(1) actually meant "ownership."
From this explanation, it is clear that when the legislature adopted in 1979 Civil Code article 531, requiring that the plaintiff in a petitory action against a defendant in possession must prove that he has acquired "ownership from a previous owner," it intended to retain the rule in Pure Oil Company v. Skinner, not overrule it. The intent was to require that such a plaintiff prove he had acquired "ownership from a previous owner,", i.e., an owner who had a perfect record title back to the sovereign, or ownership by acquisitive prescription. Article 532 solved the common author problem, by stating that "when the titles of the parties are traced to a common author, he is presumed to be the previous owner."
If there was any doubt as to the legislative intent in adopting articles 531 and 532 in 1979, such doubt was put to rest when the legislature followed by adopting in 1981 the amendment to Code of Civil Procedure article 3653(1), which removed the troublesome clause "make out his title," and inserted instead the provision that the plaintiff must "prove that he has acquired ownership from a previous owner or by acquisitive prescription." This amendment to the Code of Civil Procedure was necessary to conform to the new Civil Code articles 531 and 532.
Our conclusion as to the intent of the legislature is supported by A. N. Yiannopoulos, Louisiana Civil Law Treatise, Vol. 2, Property, 2d Ed., Section 192 at page 517:
"Defendant in possession; proof of ownership. Article 531 of the Louisiana Civil Code, as revised in 1979, declares: "One who claims the ownership of an immovable against another in possession must prove that he has acquired ownership from a previous owner or by acquisitive prescription. If neither party is in possession, he need only prove a better title."106 This provision is new but does not change the law. It is directly applicable to claims of ownership of immovables, and, by analogy, to claims of other real rights in immovable property.
Ownership of immovable property may be acquired either by an unbroken chain of transfers from a previous owner or by acquisitive prescription of ten or thirty years.107 A real right other than ownership may be acquired by virtue of a grant from the owner of the immovable burdened by the right, by a valid chain of transfers from a person who acquired such a real right, or by acquisitive prescription.108 In a sense, proof of acquisition of ownership or other real right in one of these manners establishes a title good against the world.109"
Also supporting our view is the Comment, 55 Tul.L.Rev. 192 (1980).
We are aware that the Comments under Civil Code articles 531 and 532, adopted in *318 1979, did not appear in Act No. 180 of 1979, are not part of the articles, and were added pursuant to the joint rules of the senate and house of representatives. Nevertheless, we find these comments correctly imply the intent of the legislature was to retain the rule in Pure Oil Company v. Skinner, supra, not to legislatively overrule it.
Having reached this conclusion, it is clear that in the present case the plaintiff has not sustained his burden of proving ownership.
DEFENDANTS' FAILURE TO PRAY OR FILE A RECONVENTIONAL DEMAND FOR RECOGNITION OF OWNERSHIP
As stated above, the defendants filed an answer alleging ownership by 10 years acquisitive prescription, but they prayed only that plaintiff's suit be dismissed. Moreover, they did not file a reconventional demand. There is a procedural problem as to whether we can recognize defendants' ownership, even if they have proved it. In Clayton v. Langston, 311 So.2d 74 (La.App. 3rd Cir. 1975), we decided in a similar case that under LSA-C.C.P. article 862 we could render judgment granting "the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contained no prayer for general and equitable relief." Under the authority of Clayton v. Langston, we could render judgment in the present case recognizing defendants' ownership of the one acre in dispute if they have proved it.

DEFENDANTS' PROOF OF OWNERSHIP BY TEN YEARS ACQUISITIVE PRESCRIPTION
LSA-C.C. article 3479 provides that a party claiming ownership by the acquisitive prescription of 10 years must prove four conditions:
Art. 3479. To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
1. Good faith on the part of the possessor.
2. A title which shall be legal, and sufficient to transfer the property.
3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
4. And finally an object which may be acquired by prescription."
In the present case the defendants were in the required good faith. Mr. and Mrs. Lee Roy Hailey believed they were acquiring ownership of the property described in their deed from Mallett in 1953. Since they were in good faith at the time of their purchase of the property, it is of no consequence that they subsequently learned H. L. Weaver claimed one acre. Bishop Homes, Inc. v. Devall, 336 So.2d 313 (La. App. 1st Cir. 1976).
There is a serious question as to whether condition # 2 of article 3479 is satisfied. The title, i.e., the act of sale, by which Mr. and Mrs. Lee Roy Hailey acquired in 1953 describes the property as the "SW/4 of the SW/4 of Section 26, Township 12 North, Range 7 West, less one acre, being 39 acres, more or less." The question is whether the act of sale transfers the one acre excepted. The trial judge reasoned that since Mr. Lynn Weaver testified the SW/4 of the SW/4 of said Section 26 is a regular section containing approximately 40 acres, the sale of the 40 acres "less one acre, being 39 acres, more or less" did not convey the one acre in dispute.
We have found the case of Harrill v. Pitts, 194 La. 123, 193 So. 562 (La.1940), which was a petitory action by plaintiffs claiming ownership of 108 acres by record title against defendants in possession claiming ownership of the 108 acres by 10 years acquisitive prescription. The act of sale on which defendants relied conveyed 120 acres but reserved 12 acres which were not described. Plaintiffs contended that since the reserved 12 acres could not be located, the sale did not convey the 108 acres. Citing many cases from common law jurisdictions, *319 the court applied the rule that where a tract of land is conveyed less and except a smaller tract which is not adequately described, the benefit of the insufficient description goes to the grantee, under the general rules that a conveyance should be given effect if possible, and that insufficiencies in descriptions are construed against the grantor who drew the act. The court held the act of sale to the 120 acres conveyed the 108 acres in dispute, although there was nothing in the sale to show where the excepted 12 acres were located. However, the court also considered extrinsic evidence, other deeds of record, to show the location of the 108 acres.
In the later case of Blevins v. Manufacturers Record Publishing Company, 235 La. 708, 105 So.2d 392 (1958), the plaintiff in a petitory action claimed ownership of 408 acres by record title originating with a sale of a fractional section of land less and except the 408 acres which were not adequately described. The defendant claimed the 408 acres by record title from a common author. In the original opinion the Supreme Court applied the rule from Harrill v. Pitts, supra, that where a tract of land is conveyed less and except a smaller tract which is not adequately described, the grantee shall have the benefit of the defect, and the larger tract is conveyed. Three justices dissented on the grounds that if Harrill v. Pitts is good law, it does not apply to the plaintiff in a petitory action who must rely on the strength of his own title and not on the weakness of his adversary. On rehearing in Blevins, the majority did not rely on the rule from Harrill v. Pitts, but relied instead on a subsequent correction deed adequately describing the excepted acreage.
We find no other case which has followed the rule in Harrill v. Pitts, supra. From the majority and dissenting opinions in Blevins v. Manufacturing Record Publishing, supra, it is apparent that the Supreme Court had some doubts as to the Harrill v. Pitts rule and was reluctant to extend it to a situation where the excepted acreage rather than the larger tract was at issue. We conclude that even if the Harrill v. Pitts rule is still viable, we would have to extend it to apply it in the present case. As stated above, the rationale for the Harrill v. Pitts rule is that a conveyance should be given effect if possible, and that an insufficiency in the description of a reserved or excepted tract of land should be construed against the grantor who drew the act. In the present case, the defendants are the successors in title of Lee Roy Hailey, who was the grantee in the 1953 sale from Mallett, which sale inadequately described the excepted one acre. However, the evidence does not show that plaintiff is the successor in title of any grantor against whom the deficient description should be construed. Moreover, the present case differs from Harrill v. Pitts in that here the excepted acreage is at issue, not the larger tract.
We also note that there is a serious question as to whether the one acre in dispute could be described with sufficient certainty to render judgment recognizing defendants as owners thereof. There is no survey in the record showing that the fence is located on the boundary lines of the SW/4 of the SW/4 of said Section 26 and along the west side of the Ashland-Creston highway. Thus, there may be a question as to whether the one acre in dispute, as described in plaintiff's petition, is actually located inside defendants' fence around their 32 acres.
As to that portion of the trial court judgment which recognizes the defendants as the owners of 39 acres, we note that the 39 acres is not in dispute, and its ownership should not be adjudicated in these proceedings.

DECREE
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that judgment be rendered herein in favor of defendants and against the plaintiff dismissing plaintiff's suit. All costs in the trial and appellate courts are assessed against the plaintiff-appellee.
REVERSED AND RENDERED.
*320 SWIFT, J., dissents in part and assigns written reasons.
DOUCET, J., dissents and assigns written reasons.
SWIFT, Judge, dissenting in part.
Being of the opinion that the rule of Harrill v. Pitts, 194 La. 123, 193 So.2d 562 (La.1940), is applicable, I respectfully dissent from the refusal to recognize the defendants' ten year prescriptive title to the one acre tract claimed by the plaintiff in this suit. Otherwise, I agree with the majority's decision.
DOUCET, Judge, dissenting.
I respectfully dissent on the grounds that plaintiff established all that was required to sustain his petitory action. The majority imposes a burden of proof which is unwarranted under the law as presently written.
The trial court and majority properly reject defendants' plea of ten years acquisitive prescription as defendants do not have a deed translative of title to the disputed property. Indeed, defendants' deed expressly excepts the acre claimed by plaintiff. Thus the requirement of just title as to the disputed tract is not met. See: Ryder v. Lacour, 322 So.2d 243 (La.App. 3rd Cir. 1975) writ refused 325 So.2d 274; Fiorello v. Knecht, 334 So.2d 761 (La.App. 4th Cir. 1976) writ denied 338 So.2d 300.
As to defendants' assertion that plaintiff did not meet the burden of proof required in petitory actions, the trial judge was of the opinion that plaintiff had proven beyond any doubt that his ancestor in title purchased the one acre tract in question in 1946 and he in turn purchased same from his ancestor in title. LSA-C.C. Art. 531 provides that one who claims the ownership of an immovable against another in possession must prove that he acquired ownership from a previous owner or acquisitive prescription to obtain a judgment in a petitory action recognizing his ownership.[1] This article is new. Accord: LSA-C.C.P. Art. 3653 (as amended Acts 1981 No. 256).
Appellants contend, and the majority agrees, that what Art. 531 really means is that the plaintiff herein must establish an unbroken chain of valid transfers from the sovereigna title good against the whole world, without regard to the title of the party in possession. Admittedly the comments following Art. 531 purport to retain the "good against the world" standard set forth in Pure Oil Co. v. Skinner, 294 So.2d 797 (La.1974), however it is axiomatic that the comments form no part of the law.[2] When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit. LSA-C.C. Art. 13.
Courts must take the law as they find it. As the meaning of Art. 531 is clear and unequivocal we must expound and administer it as written, as to do otherwise we would be assuming a legislative function. Giving the words used in Art. 531 the meaning they are ordinarily understood to have, plaintiff sustained his burden of proof by establishing that he acquired ownership from a previous owner. Thus the title of defendant would not be at issue until plaintiff met this burden. As plaintiff sustained his burden and defendants had no title the trial judge's ruling in this regard was correct. Furthermore, appellant's interpretation, that what Art. 531 really means is that plaintiff must establish title good against the world, leads to the questionable result of the land belonging to nobody as defendants clearly have no title and cannot claim ownership via acquisitive prescription.
*321 Equally applicable to this case is the recent decision of the Louisiana Supreme Court in Badeaux v. Pitre, 382 So.2d 954 (1980) wherein plaintiff, under similar circumstances was held to have met the burden of proof required in petitory actions:
"Although it be true that the plaintiff in a petitory action, must succeed on the strength of his own title, and not on the weakness of his adversary's yet, when the latter has no title at all, he cannot, as a trespasser, take advantage of any defect in the former's muniments of title. In such cases, a title apparently good, is all that is required to maintain the petitory action. Zeringue v. Williams, 15 La.Ann. 76." (emphasis added)
With respect to appellant's contention that the trial court erred in finding plaintiff to be owner of the entire one acre, rather than one-half thereof, I observe that by a correction deed the property description may be corrected, as between the parties, to reflect their true intent, and such reformation relates back to the date of the original deed provided there be no prejudice to third persons. Blevins v. Manufacturers Record Publishing Company, 235 La. 708, 105 So.2d 392 (1957). For reasons aforementioned, the defendants are not third persons such that they would have relied upon the public records to their detriment. I conclude the trial judge's ruling in this regard was correct.
I find merit in appellant's final assignment of error. The opinion of the trial court indicates that defendants claimed the entire forty acres, however, they did not pray for recognition of ownership of said land, nor did they file a reconventional demand. They merely asserted acquisitive prescription as a defense with respect to the disputed acreage. Accordingly, this is the only portion of the trial court's judgment which should be reversed.
For the reasons assigned, I respectfully dissent.
NOTES
[1] Art. 531 Proof of ownership of immovable

One who claims the ownership of an immovable against another in possession must prove that he has acquired ownership from a previous owner or by acquisitive prescription. If neither party is in possession, he need only prove a better title.
[2] Indeed these comments were not included in the house bill (Acts 1979, No. 180) but were added later. Furthermore, Section 6 of Acts 1979, No. 180 provides "The article headnotes, the Expose de Motifs and the Comments in this Act are not intended to be considered as part of the law and are not enacted into law by virtue of their inclusion in this Act."