STOKER, Judge.
This is a petitory action in which neither plaintiffs nor defendants are in possession. The trial court held that the plaintiffs “established the best claim to the property, and that judgment should be rendered declaring them to be .the owners of the property in question.” From a judgment to that effect the defendants appealed. We reverse.
The property consists of approximately 164.65acres of low marsh land located in the Rapides Parish, Louisiana, and is described in footnote one below.[1]
The property was acquired by one George Y. Kelso on August 5,1876, from Robert P. Hunter through an act of cash sale which is recorded in Rapides Parish, Louisiana. This George Y. Kelso’s marital status is not set forth in the act of sale. Plaintiffs and defendants both claim the property through persons bearing the name George Y. Kelso. This case presents a unique issue because neither set of parties can trace a record title-to the George Y. Kelso who purchased the property. Neither set can establish ownership by prescription. The facts show *974 that in all likelihood the property has never been occupied and has perhaps never been possessed in the legal sense, at least for any appreciable period of time.
The plaintiffs are descended from a George Y. Kelso who married Felonese Kel-so on April 20, 1887. Defendants claim through a George Y. Kelso who married Mary L. Baillio on November 10, 1869, according to a marriage certificate of record in Rapides Parish, Louisiana. (D-l) A discrepancy arises in defendant’s facts through an affidavit executed on September 29, 1950, in the Succession of Marie A. Mitchell (D-4) in which the affiants stated that George Y. Kelso was married but once and then in 1874 to Marie L. Kelso.
The plaintiffs, descendants of Felonese Kelso and the George Y. Kelso she married, either reside in Rapides Parish or show origins and close family connections in Rapides Parish. Some of the plaintiffs testified. The defendants are all located out of Louisiana and none of them testified. In fact, the defendants produced no testimonial proof and relied solely on documentary evidence.
The George Y. Kelso who married Felo-nese Kelso died in 1901 and her husband died in 1914. Marie L. Kelso died in 1921 and her husband died in 1900. The plaintiff-descendants of Felonese Kelso deny any knowledge of the existence of a George Y. Kelso who was married to Marie L. Baillio until just prior their bringing of this petito-ry action. The thing which sparked the action was the discovery by plaintiffs that the public records contained certain transactions and succession proceedings in which defendants or their ancestors (actual or in title) figure and which affected the 164 acres of property which is the subject of the litigation.
Plaintiffs have had minimum contact with the property and there is no evidence that defendants have ever had any physical contact with the property. The indifference to the property in previous years may possibly by explained by the fact that the land is marsh land completely enclosed by other lands owned by others, and there is no ready access to it. Moreover, the property is split by Bayou Boeuf, a major drainage stream which flows diagonally across the property.
From a factual standpoint the general facts of the case are as follows:
1. In 1876 an unidentified George Y. Kelso bought the property through a recorded act of sale.
2. After the 1876 purchase there is no recorded act translative of title (ownership) of the property out of the unidentified George Y. Kelso.
3. Neither of the parties can prove ownership through prescription. Although the defendants claim 30 years acquisitive prescription, there is no evidence of corporeal possession such as would begin prescription.
4. Both sets of parties claim their alleged ancestor in title is the George Y. Kelso who purchased in 1876, but there is no concrete evidence to support the claim of either party.
5. Plaintiffs deny any kinship with the Kelso who is the ancestor of the defendant set of Kelsos. There is no evidence or suggestion that the two George Y. Kelso’s of plaintiffs and defendants were ever married twice.
6. The Succession of George Y. and Fel-onese Kelso does not dispose of nor mention the property but the Succession of Marie A. Mitchell, the starting point of defendants’ title, does purport to dispose of the property. An affidavit in the succession alleges that Marie A. Mitchell was a daughter of George Y. Kelso and Marie L. Kelso.
7. George Robert Kelso, Jr., the grandson of George Y. Kelso of the plaintiffs, testified that in the middle 1940’s he helped Irion LaFargue, a surveyor, survey the property while his father, George Robert Kelso, was present. The elder George Robert Kelso was a petitioner in the Succession of the George Y. Kelso who married Felo-nese. Such a survey was in fact made on August 19, 1944. (See P-4)
8. The elder George Robert Kelso paid the taxes on the property several times, *975 according to George Robert Kelso, Jr.’s testimony, but stopped when told someone else was paying them.
9. Mr. Kirby Joseph Gleason, a son-in-law of the plaintiffs’ George Y. Kelso, testified that his wife attempted to pay taxes but was prevented on one occasion after being informed that someone else was paying them.
10. Mrs. Katie Kelso Swift testified that her father told her that her grandfather, who was George Y. Kelso of the plaintiffs, said he bought the property in question.
11. It was stipulated at trial that since 1920 tax notices on the property were sent to persons in the defendants’ family.
12. Several acts which encumbered or alienated the property were introduced by the Marie Kelso group which indicates that they have regarded the property as their own: a timber sale dated June 16, 1916; a mineral lease dated May 3,1922; the January 3, 1951, judgment in the Succession of Marie A. Mitchell, daughter of Marie Kelso, which devolved upon Patricia Nichley, Marie Mitchell’s daughter, a one-half interest in the land; a September 6, 1957, sale by Patricia Nichley to Constance L. Lange of % interest in the land; a September 3,1968, right-of-way grant from Constance Lange to Rapides Parish.
THE BURDEN OF PROOF
This is a petitory action where neither party claims to be or is in possession and the burden of proof in such an action is set forth in Civil Code article 531 which reads as follows:
Art. 531. Proof of ownership of immovable
“One who claims the ownership of an immovable against another in possession must prove that he has acquired ownership from a previous owner or by acquisitive prescription. If neither party is in possession, he need only prove a better title.”
and Code of Civil Procedure article 3653, which reads as follows:
Art. 3653. Same; proof of title; Immovable
“To obtain a judgment recognizing his ownership of immovable property or real 'right therein, the plaintiff in a petitory action shall:
“(1) Prove that he has acquired ownership from a previous owner or by acquisitive prescription, if the court finds that the defendant is in possession thereof; or
“(2) Prove a better title thereto than the defendant, if the court finds that the latter is not in possession thereof.
“When the titles of the parties are traced to a common author, he is presumed to be the previous owner.”
The trial court decided this case in favor of the plaintiffs, the Felonese Kelso group, on the basis of finding that they had “established the best claim to the property in question.” (Emphasis supplied.) As noted in the codal articles quoted above, the burden of proof which plaintiffs bore at the trial of this case was to prove a better title to the property than that of the defendants. Hence, the first thing which plaintiffs must have proven was that they have a title.
As recently noted by Judge Culpepper of this court in Weaver v. Hailey, 416 So.2d 311 (La.App. 3rd Cir.1982), the word “title” is not defined in our codes. That case did not deal with a petitory action in which neither party was in possession of the property in dispute. Therefore, the case was governed by the 1979 adoption of Civil Code articles 531 and 532 and the 1981 amendment of Code of Procedure article 3653. In their present form, where the defendant is in possession, these articles refer to “ownership” rather than “title”. In Weaver v. Hailey, it was concluded that “title” was equivalent to “ownership”. If the same meaning is applied in the case before us, in which neither party is in possession, it would result in construing the burden of plaintiffs as proving “better ownership”. Such a theoretical concept would appear to us to be somewhat strained or obscure. Therefore, we think it was significant that the Legislature retained the word “title” in providing for the contingency of both parties in a petitory action being out of posses *976 sion whereas it focused on the word “ownership” in providing for the contingency of the defendants being in possession.
PLAINTIFFS FAILED TO ESTABLISH IDENTITY WITH 1876 GEORGE Y. KELSO VENDEE
Although we mention the conceptual difficulties discussed above, such discussion provides little aid in our resolution of this case. Whether we focus on “title” or “ownership,” our inquiry is the same. The last record title holder is that George Y. Kelso who purchased the property on August 5, 1876, whose marital status was not mentioned and whose act of sale is on record in the records of Rapides Parish. The practical burden of plaintiffs is to establish an identity between that George Y. Kelso and the George Y. Kelso who married Felonese Kelso, from which union they descended. There is no evidence of such an identity.
Presumably, the George Y. Kelso who bought the property in 1876 is deceased. If plaintiffs could show that fact and also that they are descendants of that George Y. Kelso, they would be in a position to seek a judgment of possession evidencing their ownership of the property in question. Aside from such opposition as they might draw in such a proceeding from the present defendants, plaintiffs are unable to establish any identity between their ancestor George Y. Kelso and the 1876 vendee George Y. Kelso.
All that plaintiffs have shown is a tradition among some family members to the effect that their biological ancestor named George Y. Kelso had at some time purchased the property. They have not proved this ancestor and the 1876 vendee, George Y. Kelso, are one and the same.
The plaintiffs not only have no record title to the property in question, they have not proved ownership through inheritance from the 1876 vendee, George Y. Kelso. They have not produced any evidence to show that their biological ancestor, George Y. Kelso, ever treated the property as his. They have not shown, for instance, that he used it, paid taxes on it, or left any records pertaining to it. Most damaging to plaintiffs is the fact that those of his descendants who handled the succession of the biological ancestor failed to list the property in his succession.
For the foregoing reasons, we conclude that plaintiffs have not proved any title to the property, much less a better title than any title defendants may have. Defendants have not shown any act translative of title out of the 1876 vendee, George Y. Kelso. Likewise, they have not shown ownership through proof of identity between the 1876 vendee, George Y. Kelso, and the person of the same name who married Marie L. Kelso. Defendants did not reconvene and request that they be declared owners of the property. On the state of evidence, we are not disposed to consider this question even in the absence of a prayer for such relief, as was done in Weaver v. Hailey, supra, following Clayton v. Langston, 311 So.2d 74 (La.App. 3rd Cir.1975). Nevertheless, defendants’ evidence is considered- as evidence adverse to plaintiffs’ case. This is not to say that defendants should prevail over plaintiffs and we make no pronouncement on that question. What we do say is that it is a fact to be considered against plaintiffs that there appears to have been at least one other George Y. Kelso whose descendants have seen fit, as early as 1916, to treat the property as their own.
For all we know there may have been three George Y. Kelsos. Conceivably, the 1876 vendee of the property was not biologically related to plaintiffs or the Kelsos in the defendant line.
For the foregoing reasons, the judgment of the trial court is reversed and judgment is now rendered in favor of defendants and appellants rejecting the demands of plaintiffs and appellees. The costs of court, including the costs of this appeal, are assessed to plaintiffs-appellees.
REVERSED.

. The property involved in the petitory action is described in plaintiffs’ petition as:
“A certain tract of land, together with all buildings and improvements thereon and all rights, ways and privileges thereto belonging, being, lying and situated in Rapides Parish, Louisiana, and being the Southeast Quarter of Section 29, T 3 N, R 1 W, Rapides Parish, Louisiana, containing 164.75 acres, more of less.”