493 So.2d 705 (1986)
Wesley GRAHAM, et al., Plaintiff-Appellant,
v.
McRAE EXPLORATION, INC., et al., Defendant-Appellee.
No. 17992-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1986.
Rehearing Denied September 18, 1986.
*706 J. Michael Rhymes, Monroe, for plaintiff-appellant.
Shaw & Shaw, Inc. by William M. Shaw, Homer, for defendant-appellee.
Before JASPER E. JONES, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiffs appeal a ruling of the trial court sustaining a peremptory exception of no cause of action filed by defendants which allege that plaintiffs failed to file their possessory action as to mineral rights on a disputed piece of property within one year of the disturbance of possession of those mineral rights. We find the plaintiffs were barred from bringing a possessory action as to the mineral rights, but for the reasons stated below, we find plaintiffs do have a cause of action for possession of the surface of the property. For those reasons we reverse the trial court judgment sustaining the exception of no cause of action and remand the case for further proceedings.
This case involves numerous parties. The plaintiffs are the heirs and successors in title of Wesley Graham and Bessie Wright Graham and their mineral lessees. The defendants are the heirs and successors in title of Mrs. F.A. Gladney and their mineral lessees. (A listing of all the parties to this litigation is contained in an unpublished appendix.)
This possessory action was originally filed in the trial court on May 30, 1980 by Wesley Graham and the heirs of his deceased wife, Bessie Wright Graham. Graham alleged that in 1942 he purchased ten acres of land from Mrs. F.A. Gladney for $200. Graham built a house on the property and lived on the property from that time until his death in 1982. Bessie Graham died in 1960. Since Wesley Graham passed away while these proceedings were pending, his heirs were substituted as parties plaintiff.
According to the plaintiffs' allegations, in 1974 the heirs of Mrs. F.A. Gladney executed a mineral lease on the property to Perry G. Holloway. Holloway conveyed a 5/12 interest in the lease to Smackover Producing Company and a 5/12 interest to Jack T. Everrett. All three parties then subleased a ¼ interest in the lease to MRT Exploration Company. It was further alleged that in 1976 the property in question was included in an oil and gas production unit by order of the Commissioner of Conservation of the State of Louisiana and that production was ultimately obtained from the unit, although no well was drilled on the property itself.
*707 Plaintiffs did not specifically allege when this well was drilled or when it began to produce, but the record clearly indicates that these activities occurred more than one year before the Grahams filed this possessory action. The petition alleged that the granting of the mineral lease and the production of minerals from the property constituted a continuous disturbance of the Grahams' possession. Graham filed to be recognized as the possessor of the property and for a full accounting of the minerals taken from the property.
A petition to intervene was filed by several parties claiming to hold mineral leases on the property granted by the Grahams, alleging that the Grahams, through various lease agreements, executed mineral leases in their favor in late 1978 and early 1979. The intervenors sought to share in the accounting should plaintiffs be successful in their possessory action.
The lessees of the Gladneys filed an answer, a reconventional demand for recognition of the validity of their mineral leases, and a third party demand against the Gladneys for a return of bonuses and royalties paid them should the Grahams be successful.
The Gladney lessees then filed a peremptory exception of no cause of action and/or liberative prescription, as to the mineral rights, claiming the Grahams failed to file their possessory action within one year of the alleged disturbance of possession of the mineral rights.
The trial court entered a judgment sustaining this exception by the Gladneys' lessees, dismissing with prejudice the Grahams' petition against the Gladney lessees, reserving the Gladney lessees' rights under the reconventional and third party demands.
Thereafter, the Gladneys filed an exception of no cause of action, also claiming that the Grahams were not entitled to assert a possessory action as to the mineral rights in the property because they failed to file their action within one year of the time of the alleged disturbance of possession.
The trial court also sustained this exception and dismissed the Grahams' suit with prejudice. It is from this ruling that the Grahams have appealed, asserting that the trial court erred in sustaining the exception of no cause of action and in dismissing the suit entirely, rather than limiting the effect of the judgment to the mineral rights, leaving the plaintiff's claim to possession of the surface of the property intact, and in failing to allow the Grahams time to amend their pleadings and attempt to remove the grounds for the exception.
The plaintiffs argue that possession of the land includes possession of mineral rights, and that execution of a mineral lease by persons who are not in possession does not interrupt plaintiff's physical and actual possession. They argue that the mineral lease is a continuous disturbance in law but does not interrupt corporeal possession, that production from a unit well without actual drilling operations on the disputed property does not dispossess an adverse possessor, and further, that if there was a defect in the pleadings the trial court should have granted them a reasonable time within which to amend and cure any defects.
The defendants argue that the pleadings filed by plaintiffs failed to allege that their possessory action was filed within one year of the disturbance of possession caused by the granting of the mineral lease by the Gladneys. The defendants also argue that adverse possession of mineral rights through production of a unit well is sufficient to disturb the possession of an adverse possessor.
The record does not contain written reasons for the trial court judgment. The judgment simply sustains the Gladneys' exception of no cause of action and dismisses the Grahams' suit with prejudice. (In brief, defendants refer to a letter written by the trial judge when he sustained the lessees' exception. However, that letter does not form a part of this appellate record.)
*708 Plaintiffs claimed in their petition they were in possession of both the surface of the property and the mineral rights therein. It is clear that surface rights and mineral rights may be possessed separately and, depending upon the facts and circumstances of each case, disturbance of possession of one does not necessarily constitute disturbance of possession of the other. It is also clear that a possessory action must be brought within one year of the disturbance of possession. In the instant case, we find that the production from the unit well was a disturbance in fact of the Grahams' mineral rights on the property and the trial court correctly found that because plaintiffs failed to bring a possessory action as to the mineral rights within one year of the disturbance they are barred from doing so. However, we find that the disturbance of mineral rights in this case did not disturb the right of possession of the surface and the Grahams have not lost the right to bring a possessory action for the surface of the property.
The requisites for maintaining a possessory action are set forth in LSA-C.C.P. Art. 3658:
To maintain a possessory action the possessor must allege and prove that:
1. He had possession of the immovable property or real right therein at the time the disturbance occurred;
2. He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
3. The disturbance was one in the fact or in law, as defined in Article 3659; and
4. The possessory action was instituted within a year of the disturbance.
Further, LSA-C.C.P. Art. 3659 defines a disturbance in fact and a disturbance in law, as follows:
Disturbances of possession which give rise to the possessory action are of two kinds: disturbance in fact and disturbance in law.
A disturbance in fact is an eviction, or any other physical act which prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly, or which throws any obstacle in the way of that enjoyment.
A disturbance in law is the execution, recordation, registry, or continuing existence of record of any instrument which asserts or implies a right of ownership or to the possession of immovable property or of a real right therein, or any claim or pretension of ownership or right to the possession thereof except in an action or proceedings, adversely to the possessor of such property or right.
The Gladneys argue that since they executed a mineral lease on the property in 1974 and the Grahams did not bring a possessory action until 1980, they failed to meet the requirement of filing the action within one year of the disturbance.
It is well settled that a disturbance in law does not interrupt a corporeal possession. Tenneco Oil Company v. Houston, 364 So.2d 1056 (La.App.2d Cir.1978); writ granted on other grounds, 367 So.2d 390 (La.1979), affirmed on other grounds, 372 So.2d 1194 (La.1979); Ree Corporation v. Shaffer, 260 So.2d 307 (La.1972) A mineral lease falls under the definition of a disturbance in law and is not a disturbance in fact. LSA-C.C.P. Art. 3659.
Therefore, the mere execution and recordation of a mineral lease on the property, without more, constituted a disturbance in law, but not a disturbance in fact and did not interrupt any corporeal possession of property (including the mineral rights) by the Grahams. Montgomery v. Breaux, 338 So.2d 314 (La.App. 3d Cir. 1976), writ denied 341 So.2d 410 (La.1977) Thevenet v. Clause, 302 So.2d 649 (La.App. 3d Cir.1974). Under the provisions of the Louisiana Mineral Code, a possessor of land as owner without title, such as the Grahams, possesses the mineral rights inherent in perfect ownership of land. LSA-R.S. 31:155.
*709 However, possession of mineral rights may be lost by adverse use, or the exercise of them according to their nature. LSA-R.S. 31:156 provides:
Possession of mineral rights under Article 154 or 155 is lost by adverse use or exercise of them according to their nature. Loss of possession occurs although the production or operations constituting the adverse use or exercise are not on the land being possessed. It is sufficient that the production or operations constitute a use of the mineral rights according to the title of the owner thereof. In the case of a mineral lease, the use or exercise must be such that it would interrupt the liberative prescription of nonuse if the lessee had been the owner of a mineral servitude.
Comments to this provision state:
Article 156 accordingly provides that whenever there is a use of mineral rights according to their specific nature the possession of an adverse possessor of the surface can be interrupted and thus acquisitive prescription can also be interrupted by such a use even though the exercise constituting the use requires a period of less than one year. The provision that such an interruption can take place even though not actually on the property being adversly possessed is a statement of established law....
Therefore, the reduction of minerals to actual possession is sufficient to evict an adverse possessor of the surface from possession of the mineral rights. The interruption of possession of the minerals can take place even though the well from which the minerals are obtained is a unit well and not actually on the property being adversely possessed. Goree v. Sanders, 203 La. 859, 14 So.2d 744 (1943); International Paper Company v. Louisiana Central Lumber Company, 202 La. 621, 12 So.2d 659 (1943); Lenard v. Shell Oil Company, 211 La. 265, 29 So.2d 844 (1947).
Under these principles, the simple filing of the mineral lease covering the property did not disturb the Grahams' possession of the mineral rights. However, production from the well and the unit did interrupt the adverse possession of the Grahams. Failure to file their possessory action within one year of this disturbance in fact barred the Grahams from asserting a possessory action as to the mineral rights.
However, the articles in the Louisiana Mineral Code and comments thereto contain no indication that reduction to possession of minerals by a well on other property and the attendant interruption of adverse possession as to the minerals also includes interruption of adverse possession of the surface.[1] The jurisprudence is clear that a disturbance is anything that prevents the possessor of real estate from enjoying it quietly or throws any obstacle in the way of that enjoyment, but does not necessarily have to constitute adverse possession, Hebert v. Chargois, 106 So.2d 15 (La.App. 1st Cir.1958).
For a disturbance to be sufficient to interrupt another's right to possess, the disturbance must bring home to the actual possessor the realization that his dominion is being seriously challenged. Harvey v. Harvey, 431 So.2d 786 (La.App. 1st Cir. 1983). In this case, the pleadings do not reveal that the defendants had entered onto the surface of the property at all. No *710 action by these defendants on the surface of the property has taken place which would interfere with plaintiffs actual use, enjoyment, and possession of the surface.
Therefore, we find that there has been a disturbance in fact of the mineral rights and since no action was instituted within one year of the date of that disturbance, plaintiffs have no cause of action as to the mineral rights. However, even though plaintiffs have lost their right to possession of the mineral rights, there remains the recorded lease which constitutes a disturbance in law as to plaintiff's possession of the surface; this is a continuing disturbance. Thus, this disturbance in law is regarded as occurring not only on the date of recordation of the instrument, but each day thereafter as long as it exists. Therefore, there having been a disturbance in law of the Graham's possession of the surface which continues, they were therefore entitled to institute their possessory action for the surface rights to the property.
However, the trial court could not procedurally grant a partial judgment on some of the issues on an exception of no cause of action. When a petition states a cause of action as to any ground or portion of the demand, the exception of no cause of action must be overruled. Miller v. McDonald's Corp., 415 So.2d 418 (La.App. 1st Cir.1982); appeal after remand 439 So.2d 561 (La.App. 1st Cir.1983), writs denied 442 So.2d 462 (La.1983). Therefore, in the present case, because plaintiffs stated a cause of action for possession of the surface rights of the property and this claim was not barred by the running of the prescriptive period, the trial court was required to overrule defendants' exception of no cause of action.
For the above stated reasons, we find that surface rights and mineral rights of this property are subject to separate possession. Plaintiffs failed to bring a possessory action for the mineral rights within one year of the disturbance of their possession by production from the unit well. However, plaintiffs may still assert a cause of action for possession of the surface. The plaintiffs' petition states a cause of action as to the surface rights and because the trial court could not issue a partial judgment on the exception of no cause of action the trial court erred in sustaining the exception. The trial court judgment is therefore reversed and the case remanded for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] Comments to 31:155 provide:

Careful note should be taken of the fact that despite the principle of Article 155, one who owns a valid mineral right may interrupt the possession of the adverse possessor of the land without title as to that particular mineral right. Thus, if record owner A conveys a mineral servitude to B, B's exercise of the mineral servitude prior to the accrual of the thirty year prescription in favor of X, a possessor of a portion of the servitude tract without title, will interrupt X's possession of the mineral rights even if the operations are not conducted on the portion of the burdened tract being adversely possessed by X. X may perfect his title to the land as against A, but B's mineral right will burden the perfected prescriptive title. If, of course, B's operations are on the portion of the tract being adversely possessed by X, X's possession may not only be interrupted as to the mineral right but as to the surface as well provided the requisites for a natural interruption of corporeal possession are met....