NORRIS, Judge.
Plaintiffs, Alf Richardson and the co-administrators of the Succession of Mattie Brown Richardson, Alf Richardson, Jr. and Hewitt Richardson, appeal the trial court’s judgment denying their possessory action. Plaintiffs (the Richardsons), filed their original petition December 2, 1985. The Richardsons alleged that defendants, Felix A. Hesser, Sally Hesser Bates, Margaret C. Hesser, and the unknown heirs of Louis P. Hesser and Alex Hesser (the Hessers) had disturbed their possession by executing a coal and lignite lease recorded March 16, 1979. The Richardsons asked that they be recognized as possessors of the land lying within the old bed of Chemard Lake and that the Hessers be required to assert a claim of ownership within 60 days of judgment or be precluded from asserting ownership. The record makes it clear that the disputed property, known as Louies Break[1] or the Break, is in the southern and eastern portions of the fenced tract depicted on the survey, P-1.
The trial judge found that the Richard-sons failed to establish their claimed possession by a preponderance of the evidence, and rejected their demands. The judge commented more extensively on the evidence and his findings in his written reasons for judgment, which we analyze below. The Richardsons’ primary assignment of error is that the trial judge erred in not finding that they had sufficiently possessed the lands in question to be maintained in possession.
FACTS
The uncontradicted evidence shows that Alf Richardson, who was 72 at the time of trial, built his house on the land shown in P-1 in 1944 or 1945, after the war. He lived there with his wife Mattie Richardson and their children. Over a period of time he fenced the property; the parties stipulated that the fence was located as marked on the survey, P-1. Alf Richardson, his niece Shirley Payne, two of his sons, Amos Richardson and Alf Richardson, Jr., and a neighbor J.T. Hector, all testified that Alf Richardson farmed the land shown in the survey. Since the lower part of the land, the break, floods during parts of the year he farmed primarily on the high ground with only an occasional crop in the break. However, he consistently ran cattle in the break. Alf Richardson and at times Alf Richardson, Jr. and Amos Richardson kept cows on the property shown in P-1. Alf Richardson ran cattle over the entire tract, utilizing crossfences at the pertinent times to keep them away from his crops. Hector testified that he helped Alf Richardson cut ties from the land in the break, and Amos Richardson testified that he and his father often cut firewood from the break.
Felix Hesser said that in 1971, he, his sister, and their uncle walked over the property they claim. He admitted that he could not describe the exact location of this property, and that he had not been back to the property since. The Hessers do not contend they have physically possessed the property in dispute. In July of 1978 Alf Richardson and his wife, Mattie Richardson, gave Cleco and Swepco a coal and lignite lease. On March 16, 1979 the Hes-sers’ lease was recorded, purporting to affect lot 9 of Section 11, referred to as the “Dry Lake Lands,” which the record shows corresponds in part with the area of the break previously fenced in by the Richard-sons. Mattie Richardson died in June of 1981. In April or May of 1984, Cleco-Swep-co purchased Alf Richardson’s house, but no land, and he moved out within a few months.[2] Meanwhile, in October of 1983 Continental Hodge Woodlands, Inc. (Conti *1290 nental) filed suit against Alf Richardson, instituting a petitory action disputing the ownership of parts of lots 4 and 2, and all of lot 5 in Section 11, Township 11 North, Range 11 West. In October 1984 they executed a settlement consisting essentially of quitclaims executed by both parties. Continental recognized that Alf Richardson had a claim of acquisitive prescription on the lands in Section 11, Township 11 North, Range 11 West, and deeded him three acres upon which his house (now sold to Cleco-Swepco) had been located. Alf Richardson in turn quitclaimed any right he had to any lands[3] in Section 11, Township 11 North, Range 11 West, specifically including certain lands, some of which are located on the northern portion of the fenced property, the high land. However, the land at issue here, the old lake bed, also known as Louies Break, was exempted from the property quitclaimed to Continental. In December of 1984 Alf Richardson sold to Cleco-Swepco the three acres which had surrounded his home.
After the compromise, although he had moved out of the old home, Alf Richardson returned daily to inspect the fences, which he and his sons continued to repair. He continued tending his garden on the high ground and running his and his sons’ cattle in the break. Some time around the first of 1985 Alf Richardson and his sons removed the cows because they were escaping the fences which were being broken by the heavy mining machinery.
On December 2, 1985 the Richardsons filed this lawsuit, alleging they had been disturbed in their possession by the Hesser lease. The trial judge ruled against the Richardsons, holding that they had not proved possession of the property that would entitle them to be maintained as possessors. Some months later, the judge issued written reasons pursuant to the Richardsons’ request.
DISCUSSION
In order to maintain a possessory action the plaintiff must allege and prove that:
(1) He had possession of the immovable property or real right therein at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance.
(LSA-C.C.P. art. 3658).
The trial court ceased his analysis under the statute after finding that the first criterion was not met, that the Richardsons never showed that they were in possession of the disputed land. Appellate courts in civil cases have full and complete jurisdiction to review the facts in cases appealed, and therefore we must review the entire record to determine whether or not the findings of the trial court are clearly wrong or manifestly erroneous. L.S.A.-Const. Art. 5 § 10(B); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); IMC Explora *1291 tion Co. v. Henderson, 419 So.2d 490 (La. App. 2d Cir.1982), writ denied 423 So.2d 1149 (La.1982). Our review of the record convinces us that several of the trial judge’s findings were clearly wrong. For the sake of brevity we have itemized them:
(a) In the compromise settlement with Continental, Alf Richardson received title to 17.92 acres, on which his home was located, and Alf Richardson recognized the Company as owning the remainder of the land in dispute.” The quitclaim clearly specifies that Continental deeded Alf Richardson three acres around his house, not 17.92 acres, (see fn. # 2). Also, Alf Richardson specifically excepted Louies Break, the old lake bed, from the land he quitclaimed to Continental.
(b) “The Company [referring to Continental] gave Alf Richardson until the end of December 1984 to remove his cattle and get off the Company land”, and Alf Richardson was moving off the land pursuant to the compromise. There is no evidence in the record to support the trial judge’s belief that Continental had required Alf Richardson to move himself or his cattle. The compromise was executed several months after Alf Richardson had already sold his home and moved out of that residence. Further, the compromise specifically deeded Richardson the three acres around his residence, and exempted the break lands from the property deeded Continental, so there would be no need for him to move as a result of the compromise. A study of the judge’s written reasons shows that the trial judge mistakenly believed that William Pershem, the supervisor of Mineral Land development for the Cleco-Swepco Dolet Hills Lignite project, was a representative . . . Pershem testified that Alf Richardson moved away a few months after Cleco-Swepco bought his home. J.T. Hector, a man who had lived near Alf Richardson, testified that he had moved shortly after Alf Richardson, also at the behest of the “coal people.” It was due to the sale of his house and the imminent mining that Alf Richardson moved, not as a result of the compromise with Continental.
(c) The cattle remained on the land because he “dallied at removing his few cattle ...” and "... other cattle owned by other family members also got onto this area, apparently by breaking through a fence which was on his mother’s adjoining 40-acre tract.”; "... he was in the process of removing these cattle because he knew he was required to do.” As above, nothing in the record supports the proposition that the Rich-ardsons moved their cattle at the demand of Continental. Pershern testified that Alf Richardson moved his cows because the miners’ machinery was breaking fences and the Richardsons were having trouble keeping their cows in the fence. Alf Richardson, Jr. and Amos Richardson both testified that some of the cows being run on that land were theirs, and they had moved the cows in early 1985 because they were escaping the fences. The only conclusion supported by the record is that the Richardsons moved the cows for their own convenience, because they were getting out when mining activities broke the fences in the northwest part of the property. The cattle were being kept on the land sho wn in P-1, not on an adjacent tract, and the fences were designed to keep them on that tract, not out.
(d) “The area in dispute in this case was never clearly defined ...” Admittedly, the area disputed was never described by metes and bounds, but it was marked on the survey, P-1, and described in the testimony as extending along the southern portion of the property and up the eastern side. A careful study of the transcript and exhibits shows that it is the land known as Louies Break, the break and the dried lake lands.
(e) “So plaintiff is now attempting to ‘leap frog’ over the Continental Company land which is located between he and the Hesser land ...” While it may be that the land deeded to Continental is be *1292 tween the Richardsons’ old homestead and the break, that does not change the character of the Richardsons’ possession. They were attempting to show corporeal possession of the break, not constructive possession.
(f) Finally, we note that the trial judge never mentioned the fence built by Alf Richardson, which extended through the break as shown on P-1. He began work on the fence in the 1940s, and at the very latest completed it in the 1960s. An October 1980 letter from the Hessers to Alf Richardson asked him to move the fence, and a 1980 survey showed the fence as being completed through the break. Amos Richardson, Alf Richardson, Jr., J.T. Hector, Azzie Lee Wilson, and Shirley Payne all testified that they were familiar with the fence, and that it had been there for many years.
Given these errors in his factual findings, we can only conclude that the trial court erred in not concluding that the Rich-ardsons were in possession of the lands known as the break. The type of possession required for a possessory action is the same as that required to commence the running of acquisitive prescription. Norton v. Addie, 337 So.2d 432 (La.1976). Possession is defined as corporeal possession or civil possession preceded by corporeal possession. LSA-C.C.P. art. 3660. Where a person claims by possession alone and without title the courts have required that he show adverse possession by enclosures; “enclosures” in this sense are natural or artificial markers which give notice of the character and extent of possession. Norton v. Addie, supra. Once possession is acquired by virtue of corporeal possession, it continues while there is an intent to possess as owner as long as possession is not lost by the usurpation of another. Liner v. Louisiana Land and Exploration Co., 319 So.2d 766 (La.1975).
The record shows that for many years Alf and Mattie Richardson had maintained their house, raised cows and farmed, all on the property bounded by the fence shown on the survey. They intended to possess as owners of the land, and their actions clearly constitute corporeal possession of the entire tract shown in P-1. They possessed every portion of the tract in accordance with its nature. Norton v. Addie, supra. Even after ceasing any activity on the land, they would remain in civil possession of it thereafter until dispossessed. Liner v. Louisiana Land and Exploration Co., supra.
Upon the death of Mattie Brown Richardson in 1981, her heirs continued her possession. LSA-C.C. art. 3441, comment b. The heirs’ possession was merely a continuation of the possession originated by Mattie Richardson, which would continue unless lost by the usurpation of another. Liner v. Louisiana Land and Exploration Co., supra. At this point, Alf Richardson and the heirs of Mattie Richardson were possessing as co-owners the tract of land shown in P-1. While it is true that Alf Richardson quit-claimed a portion of the land to Continental, this does not disturb his possession of the remainder of the land disputed here, the old lake bed or break, which was specifically exempted. Snellings v. Lutz, 219 So.2d 781 (La.App. 2d Cir.1969), writ denied 253 La. 1090, 221 So.2d 520 (1969). After the compromise, Alf Richardson and his sons maintained their corporeal possession of the break; they continued running cows in the break, repairing the fences on the land, and cutting firewood. They treated that portion of the land as they always had and used it to its fullest extent. The exercise of exclusive grazing privileges over the land, accompanied by the maintenance of the enclosures, constituted corporeal possession over the entire tract. Norton v. Addien supra. The trial judge was clearly wrong in finding that the Richardsons did not show possession of the disputed property. They took corporeal possession on the tract many years ago, and not only were never dispossessed, but continued their corporeal possession at least until early 1985.
Defendants next argue that the existence of the Hessers’ mineral lease in the public *1293 records since 1979 was such a disturbance that the Richardsons did not possess “quietly and without interruption” after that time, as required by Art. 3658 (2). It is well settled that the mere execution and recordation of a mineral lease on the property, without more, constitutes a disturbance in law but not in fact, and did not interrupt the Richardsons’ corporeal possission. Graham v. McRae Exploration, Inc. 493 So.2d 705 (La.App. 2 Cir.1986). Since there was no interruption of their possession for one year prior to suit, the Richard-sons fulfilled the second requirement of C.C.P. Art. 3658. Liner v. Louisiana Land and Exploration Co., supra.
Art. 3658 (3) specifies the disturbance must be one in fact or law, as per LSA-C. C.P. art. 3659.
Article 3659 provides that:
A disturbance in law is the execution, recordation, registry, or continuing existence of record of any instrument which asserts or implies a right of ownership or to the possession of immovable property or of a real right therein, or any claim or pretension of ownership or right to the possession thereof except in an action or proceeding, adversely to the possessor of such property or right.
The record shows that the Hessers had recorded coal leases in favor of Cleco-Swep-co that affect the portions of the dry lake bed at issue here. This constituted a disturbance at law. Graham v. McRae, supra.
The final requirement of art. 3658 is that the suit be filed within one year of the disturbance. When the disturbance is one in law, it is a continuing disturbance that is regarded as occurring on the date of rec-ordation of the instrument and each day thereafter. Graham v. McRae, supra; Roy O. Martin Lumber Co., Inc. v. Lemoine, 381 So.2d 915 (La.App. 3d Cir.1980). The Richardsons’ suit was filed within a year of the continuing disturbance at law.
We find that plaintiffs have satisfied each of the requirements of C.C.P. art. 3658 and the trial court was clearly wrong in holding otherwise.
Accordingly, we reverse the trial court and render judgment recognizing the plaintiffs’ right to possession of the property described in their petition, the subject of this dispute, the old lake bed of Chemard Lake known as the break, located in the SW ¼ of the NW ⅝ and the NW ⅝ of the SW ⅝ of Section 11, Township 11 North, Range 11 West, DeSoto Parish, Louisiana. Defendants are further ordered to assert their adverse claim of ownership of the immovable property in a petitory action to be filed within sixty days after the date the judgment becomes executory or be precluded thereafter from asserting the ownership thereof. Costs of the appeal are assessed to the appellees.
REVERSED AND RENDERED.

. The quit claim and the transcript refer to it as the "Break”; while the survey labeled it the “Brake". While we note the distinction between "an abrupt, significant or noteworthy change in a continuous process, trend or surface" and "rough or marshy land overgrown usually with one kind of plant” [Webster’s New Collegiate Dictionary, copyright 1981], we adopt the former spelling merely because it is used most often in the record.

. Given that mining for lignite in that area involves strip mining, we can appreciate the de- *1290 sireability of relocating anyone located on or near land soon to be mined.

. RICHARDSON does hereby SELL, TRANSFER, ASSIGN, QUIT CLAIM, RELEASE and RELINQUISH unto CONTINENTAL all of the right, title and interest which RICHARDSON may have in and to the following described property, to-wit:
Any and all lands located in Section 11, Township 11 North, Range 11 West, DeSoto Parish, Louisiana, including but not limited to:
The Southeast Quarter of Northwest Quarter, Lot 2 of fractional Southwest Quarter of Northwest Quarter and 2 Lots 4 and 5 in North part of Southwest Quarter, LESS AND EXCEPT the Southeast Quarter of Northwest Quarter and that portion of Lot 4 in the Northeast Quarter of Southwest Quarter, containing 61.72 acres sold to Sam Evans, leaving in the aggregate 50.45 acres, more or less, and LESS AND EXCEPT the following tracts "A" and “B" .,.
(A). Being the three acres which Continental had just granted to Alf Richardson.
(B). Any lands located within the meander lines of the old lake bed, also known as “Louies Break", (emphasis added)