EDWARDS, Judge.
From an adverse ruling in the trial court, Landry claimants have appealed. Because we find clear error in assigning the burden of proof and the resolution on the facts presented, we reverse and remand for proceedings consistent with the reasons stated herein.
FACTS AND PROCEDURAL HISTORY
Chevron, U.S.A., Inc., filed a concursus proceeding under LSA-C.C.P. art. 3654 to determine the proper parties entitled to mineral royalties from a disputed tract of land. Named as one set of defendants/claimants were Eric Chustz, Norris Broussard and Eloise Chustz Broussard, Roy Francis Chustz, Charles Louis Chustz, Henry Norris Chustz, and Joseph Preston Chustz and Mary Alice Aucoin Chustz, (collectively, the Chustz claimants).
Named as the second set of defendants/claimants were Edmond J. Landry and Melanie Comeaux Landry, James L. Moore and Jean Harry Moore, E. Sanders Alpaugh and Nancy Thompson Alpaugh,[1] (collectively, the Landry claimants).
*859 In response to Chevron’s concursus, the Landrys filed a reconventional demand asking that Chevron be ordered to account for all production from the disputed tract; that Chevron pay to them all unpaid royalties; that double royalties and attorneys’ fees be assessed as damages; and that the existing lease be cancelled. Chevron filed an exception of prematurity based upon an allegation that the Landrys had failed to comply with the notice requirements of LSA-R.S. 31:137,[2] which mandates written notice be given to the mineral lessee before any judicial demand can be maintained. After a hearing on the exception, the trial court found that the Landrys had complied with LSA-R.S. 31:137.
After trial on the merits, the judge ruled that the land in question belonged to the Chustz claimants; that the Landry claimants had the burden of proof to maintain their claim of thirty (30) year acquisitive prescription; that the Landry claimants had not met that burden; and dismissed the Landry claimants’ reconventional demand against Chevron. The Landry claimants then filed this appeal.
The disputed tract of land in question is an island which lies between two branches of Bayou Boidore. On the east side of the east branch of the bayou lies the undisputed property of the Chustz claimants. On the west side of the east branch lies the island. On the west side of the island lies the west branch of the bayou. On the west side of the west branch of the bayou lies the undisputed property of the Landry claimants.[3]
The island contains access only from the Landry property. On the northwest comer and on the lower west side (i.e., the Landry side), there are two earthen crossings which allow the moving of cattle and farm equipment onto the island. On the south end of the island there used to be a train trestle which provided human access to the island by “jumping” from the trestle onto the south end of the island. The Chustzs’ property did not share a boundary with the railroad trestle. In order for the Chustz claimants to access the island by way of the trestle, they would have had to cross the Lorio property which forms the southern boundary of the Chustz claimants’ property. To access the island without use of the trestle, the Chustz claimants would have had to cross Landry property to get to the earthen dikes on the western branch of Bayou Biodore. Only one of the dikes was passable year round. The second dike was flooded intermittently during the year. This dike has since been improved by the Landrys. The undisputed portion of the Landry property is fenced and the only way for the Chustzs to access the island over the earthen dikes would be to secure the permission of the Landrys.
The eastern side of the island bordered by the east branch of Bayou Boidore is, in the most part, impassable.[4] The Chustz claimants have never attempted to build a crossing, nor have they ever manifested any intention of building a crossing to the island. The bayou contains much deeper water in the eastern branch than it does in the western branch.
The Landrys’ title derives from a cash purchase by Edmond Landry, Sr. from Prudential Insurance Company of America dated December 27, 1940. The sale describes the property as:
That portion of ground, together with all the buildings and improvements thereon, and all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, designated as Plot or Lot 1 of the Subdivision of Oakland Plantation *860 in Sections 74 and 76, Township South, Range 10 East, and Sections 2, 37, 41, and 42, Township 6 South, Range_[5] East, Southeastern District of La., West of the Mississippi River, in Pointe Cou-pee Parish, La., as the same is shown on Subdivision map of said Oakland Plantation made by A.G. Mundinger, C.E. & S., dated Baton Rouge, La., May 30, 1940 of record in Conveyance Book “Q” , Entry No. 2886 of the records of Pointe Cou-pee Parish, La. Said Unit No. 1 containing 62.47 acres more or less.
Less and except a strip of land 100 feet wide to extend 50 feet on each side of the center line of the railroad as conveyed in deed by Phillips Brothers Planting Co. Ltd. to New Orleans Texas & Mexico Railroad dated July 8, 1910, recorded under Entry No. 27177 of Conveyance Book 17.
Being part of the land acquired by The Prudential Insurance Company of America under Sheriff’s Deed dated April 4, 1931, in the matter entitled “The Prudential Insurance Company of America v. Oakland Planting Company, Incorporated” No. 1089 of the docket of the 18th J.D.C., recorded under Entry No. 680 of Book “5” of the Conveyance Records of Pointe Coupee Parish, La.
Subject to right “to erect spurs and switches to reach the factory of said plantation” in sale made by Phillips Brother Planting Co. Ltd., to New Orleans, Texas & Mexico Railroad on July 8, 1910, by act recorded under Entry No. 27177 of Book 17 of the Conveyance Records of Pointe Coupee Parish, La. and subject to permit granted by The Prudential Insurance Company of America to Southern Bell Telephone and Telegraph Company dated May 16, 1940, recorded under entry No. 1957 of Book “Q” of Conveyance Records of Pointe Coupee Parish, La..
Subject also to right of way for roads and easement of drain in favor of the adjoining properties or owners through the bayous traversing the property as shown on plat of survey of A.G. Mun-dinger, C.E. & S. aforementioned.
The Chustzs trace their title from an act of sale dated February 15, 1881 from William G. Vincent to Ernest G. Beuker which describes the property as:
A certain portion of land and improvements thereon, and all right to ways, privileges and appurtenances thereunto belonging or in any way appertaining, by being in the Parish of Pointe Coupee in this State, and located by the lot No. Four (4) on a sketch hereto annexed and made part of these presents. Said portion of land is bounded on one side by property of Grossman on the other side by the bayou and fronting on the public road and _ from said public road _said to contain six acres and thirty three hundredths of an acre (6/ioo acres).[6] (Emphasis added).
The Landrys’ title refers to a lot # 1 as shown by the A.G. Mundinger survey of 1940 (hereafter, Mundinger). The Mun-dinger survey represented a subdivision of the Oakland Plantation which was acquired by Prudential Insurance Co. of America at a sheriff’s sale from Oakland Planting Company. The Chustzs’ property description places the western border of their property at “the bayou.” The Mundinger survey appears to place the eastern boundary of the Landry property on the western edge of the island. The property description on which the Chustzs’ claim is based is ambiguous.[7]
LAW
We note at the outset that the burden of proof in concursus proceedings is governed by LSA-C.C.P. art. 3654, which provides:
When the issue of ownership of immovable property or of a real right therein is *861 presented in an action for a declaratory judgment, or in a concursus, expropriation, or similar proceeding, or the issue of the ownership of funds deposited in the registry of the court and which belong to the owner of the immovable property or of the real right therein is so presented, the court shall render judgment in favor of the party:
(1) Who would be entitled to the possession of the immovable property or real right therein in a possessory action, unless the adverse party proves that he has acquired ownership from a previous owner or by acquisitive prescription; or
(2) Who proves better title to the immovable property or real right therein, when neither party would be entitled to the possession of the immovable property or real right therein in a possessory action. (Emphasis added).
The trial court improperly assessed the burden of proof against the Landry claimants to prove thirty (30) year acquisitive prescription of the disputed tract. Under LSA-C.C.P. art. 3654, the burden of proof in a concursus proceeding is allocated in a specific order of preference. Possession is a preliminary matter which must first be resolved before the issue of ownership can be determined because, otherwise, the possessor’s rights are infringed by forcing him to prove ownership. Although a concursus proceeding is not itself a real action, functionally issues of ownership are resolved by concursus. LSA-C.C.P. art. 3654 affords the same protections to the possessor in a concursus proceeding as are afforded him throughout the law, by providing that whoever would prevail in a pos-sessory action will prevail in the concursus proceeding unless the adverse party proves his own title. See LSA-C.C.P. art. 3654, Official Revision Comments; Zengel, The Real Actions — A Study in Code Revision, 29 Tul.L.Rev. 617 (1955).
As between adverse claimants with one party in possession without title, and the other party claiming under title, the party claiming under title must prove his title without reference to the title of the possessor. Pure Oil v. Skinner, 294 So.2d 797 (La.1974). While the trial judge ruled that the Landrys did not prove thirty (30) year acquisitive prescription, he did not determine whether the Landrys would have in fact been entitled to be maintained in possession in a possessory action.
While the type of possession required for a possessory action is the same as that required to commence the running of acquisitive prescription, Norton v. Addie, 337 So.2d 432 (La.1976), the legal standard to maintain each is different. In order to be successful in a possessory action, one must prove that he has been in uninterrupted possession for one year and has acquired the right to possess. LSA-C.C. art. 3422 and LSA-C.C.P. art. 3658. On the other hand, in order to maintain the claim of ownership by thirty (30) year acquisitive prescription, a party must prove his possession for thirty (30) years, LSA-C.C. art. 3486. The proper standard to have imposed on the Landrys in this concursus proceeding is only that they show their right to possess. Once the parties have successfully shown their right to possess, they are considered provisionally as owner until the right of the true owner is established. LSA-C.C. art. 3423. The question which the trial court should have addressed is whether the Landry claimants could have maintained a possessory action. If they could have, then the Chustz claimants should have come forth with sufficient proof of their title without reference to the title of the Landry claimants.
Nonetheless, because we find that the facts presented are sufficient to maintain a claim of thirty (30) year acquisitive prescription, we reverse and find that the Landry claimants are owners of the disputed tract. Possession for purposes of a possessory action is defined in LSA-C.C.P. art. 3660 which provides in relevant portion:
A person is in possession of immovable property or of a real right therein, within the intendment of the articles of this Chapter, when he has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possess *862 for himself, whether in good or bad faith, or even as a usurper.
Possession for one year gives rise to the right to possess. LSA-C.C. art. 8422. The right to possess arises out of the nature of the facts surrounding the control over the property. LSA-C.C. art. 3422 and Liner v. Louisiana Land and Exploration, 319 So.2d 766 (La.1975). “The quality of possession required in a particular case depends not only on its classification as good faith or bad faith possession, but also on the type of land in dispute.” Liner, 319 So.2d at 772. Further, an individual who claims by corporeal detention alone and without title must show an adverse possession within enclosures. Norton, 337 So.2d at 436. Enclosed does not necessarily mean fenced in but does require:
that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof. (Emphasis added).
Hill v. Richey, 221 La. 402, 59 So.2d 434, 440 (1952). See also City of New Orleans v. New Orleans Canal, Inc., 412 So.2d 975, on rehearing (La.1982).
The corporeal possession required to institute a possessory action corresponds with the possession necessary for acquisitive prescription of thirty years. Norton, 337 So.2d at 435. Consequently, the possession must be open, continuous, public, unequivocal and uninterrupted. LSA-C.C. art. 3476.
Mr. Landry moved onto the property subject to the Mundinger Survey in 1940. At that time he began farming operations. He cleared land on the disputed tract. He continuously maintained the earthen dikes which provided access to the island. His children began harvesting pecans as a cash crop. He stored his mules on the disputed tract at various times during the years before he purchased tractors. He immediately began grazing cattle on the disputed tract. At the time that he moved upon the land there was a gate across the earthen dike which provided access to the island. Mr. Landry removed the gate and placed a fence along a line bordering his field where his farming operations took place. This line followed the western branch of Bayou Boidore and was for the purpose of keeping cattle on the island and out of his planted field. At other times Mr. Landry planted com, the rows of which were still visible at the time of trial. At other times he planted rye grass for the cattle to feed upon. His family hunted on the property and his son occasionally used the island as a dump site for construction waste. Mr. Landry, Sr. also maintained all fences which bordered his undisputed tract. These fences prevented any access to the island without his permission. Mr. Landry at one time also sold timber off the disputed tract. He also occasionally cut trees for use as fire wood. The trial judge did not believe that these acts were sufficient to maintain a claim of thirty year acquisitive prescription. We disagree.[8]
The land in question is only suitable for the purpose for which it was being used. Mr. Landry unquestionably has used the property since 1940 to graze cattle. The Chustz claimants maintain that the so called “open stock” practice of allowing cattle to roam free makes the fact of cattle grazing on the disputed tract insufficient to prove possession. In this we believe they are in error. While grazing cattle on its own may not be sufficient in all cases, under the facts presented, we believe that it does show the requisite ownership intention to maintain a claim of possession as owner. A close review of the testimony establishes that there was in fact a gate which barred entrance onto the disputed tract at the time that Mr. Landry moved onto the property. There was no access from any other property except that of Mr. *863 Landry. Mr. Preston Chustz testified that even when two of his “crazed cattle” did manage to cross the eastern branch of the bayou onto the island, it was Mr. Landry who retrieved them and returned them to Mr. Chustz.
We find the recent case of Richardson v. Hesser, 516 So.2d 1288 (La.App. 2d Cir. 1987) to be instructive. In Richardson, the trial court had ruled that the acts of the Richardsons were not of a sufficient nature to support the possessory action. The appellate court disagreed and reversed the trial court. The tract of land in dispute was a “Break.” [9] In describing the claims, the court stated:
Since the lower part of the land, the break, floods during parts of the year he farmed primarily on the high ground with only an occasional crop in the break. However, he consistently ran cattle in the break. Alf Richardson and at times Alf Richardson, Jr. and Amos Richardson kept cows on the property shown in P-1. Alf Richardson ran cattle over the entire tract, utilizing cross-fences at the pertinent times to keep them away from his crops. Hector testified that he helped Alf Richardson cut ties from the land in the break, and Amos Richardson testified that he and his father often cut firewood from the break.
Felix Hesser said that in 1971, he, his sister, and their uncle walked over the property they claim. He admitted that he could not describe the exact location of this property, and that he had not been back to the property since. The Hessers do not contend they have physically possessed the property in dispute. (Emphasis added).
516 So.2d at 1289. The appellate court awarded possession to the Richardsons and ordered the Hessers to file a petitory action within sixty (60) days. We find the factual situation clearly analogous. Mr. Landry grazed cattle, hunted, and occasionally planted on the island in question. His possession has always been open, continuous and unequivocal. The land was bounded by natural enclosures and access was only through his property.
On the other hand, the Chustzs have never claimed physical possession of the island. Under the facts presented, the Landrys unquestionably could have maintained the possessory action. Because we find that this possession was continuous for over thirty years, we find that the Landrys are now owners of the disputed tract.[10]
RECONVENTIONAL DEMAND
Because we find that the land in question does in fact belong to the Landrys by acquisitive prescription, it becomes necessary to address the reconventional demand of the Landry claimants against Chevron. Prior to trial on the merits the trial court held a hearing on an exception of prematurity filed by Chevron. Chevron maintained that the Landry claimants had failed to comply with the notice provisions of LSA-R.S. 31:137.[11] After hearing testimony and receiving memorandum, the trial court ruled that the Landry claimants had complied with LSA-R.S. 31:137. Chevron applied for a writ to this court which was denied, there being adequate remedy on appeal. Chevron has neither answered the Landry claimants’ appeal nor have they filed an appeal on their own. Inasmuch as Chevron has neither appealed nor answered the Landry claimants’ appeal, the ruling of *864 the trial court has become final. Since the trial court did not reach the question of the setting of appropriate damages which should be assessed against Chevron for not responding in compliance with LSA-R.S. 13:138,[12] we remand for that determination.
Because we feel that the Landrys have presented sufficient evidence to uphold a claim of thirty (30) year acquisitive prescription, and that a contrary ruling under these facts would be clearly wrong, we reverse the trial court. Additionally, we find that the trial court improperly assessed the burden of proof in a concursus suit brought under LSA-C.C.P. art. 3654. We remand to the trial court for the proper setting of damages and mineral royalties due the Landry claimants for production under the disputed tract.
Costs of this appeal are assessed in equal proportions among the parties.
REVERSED AND REMANDED.
WATKINS and SAVOIE, JJ., dissent and assign reasons.
*865 [[Image here]]

. James L. Moore and Jean Harry Moore, E. Sanders Alpaugh and Nancy Thompson Alpaugh *859 all claim royalty interests arising out of the Landrys’ lands.

."If a mineral lessor seeks relief for the failure of his lessee to make timely or proper payment of royalties, he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease.” LSA-R.S. 31:137.

. See attached drawing of property (Appendix I).

. There was testimony by Preston Chustz that once, while the water was low, he had a crazed cow and calf cross the east branch of the bayou, but there was not any "crossing" that was susceptible to regular use.

.Unable to ascertain areas represented by "___".

.Unable to ascertain areas represented by "_”, but relevant portions are emphasized.

.The trial judge found as a fact that the Chustzs’ title included the disputed tract. While that finding may or may not be correct, because of the way we treat the thirty (30) year acquisitive prescription claim that finding is irrelevant.

. We note, as previously discussed, the Landrys need not prove thirty (30) year acquisitive prescription to be successful in this case. If they have proved acts sufficient to support a posses-sory action, they are presumed as owners until the rightful owner proves out his title. Pure Oil

. A "Break” is a “rough or marshy land overgrown usually with one kind of plant. [Webster's New Collegiate Dictionary, copyright 1981].

. Even had we thought that the possession was not sufficient for acquisitive prescription, it would have been sufficient to be maintained in possession. This would have forced the Chustzs to prove out their title in accordance with Pure Oil In this case, the Chustzs’ title description refers to their western boundary as being "the bayou” and containing 6.33 acres, more or less. If indeed their western boundary was "the bayou" they would have had to prove which bayou, the east or the west branch of Bayou Boidore. If it was in fact the west as they claim, their acreage would have been greater than fourteen (14) acres, or more than double that called for in their title. The Chustzs did try to account for this title error, but we find that their explanation is not convincing.

.See footnote # 2.

. "The lessee shall have thirty days after receipt of the required notice within which to pay the royalties due or to respond by stating in writing a reasonable cause for nonpayment. The payment or nonpayment of the royalties or stating or failing to state a reasonable cause for nonpayment within this period has the following effect on the remedies of dissolution and damages.” LSA-R.S. 13:138.