Judgment rendered November 20, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,116-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

FRITH FARMS DESOTO PARISH                    Plaintiff-Appellee
INTEREST PARTNERSHIP,
L.L.P.

versus

JAMES W. LEE                                 Defendant-Appellant

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 74386

Honorable Charles Blaylock Adams, Judge

* * * * *

JOHN S. EVANS                                Counsel for Appellants,
                                             James W. Lee, Virgie
                                             Lanell Free Lee and VJ
                                             Ranch, II, L.L.C.


WIENER, WEISS & MADISON                      Counsel for Appellee,
By: John M. Madison, Jr.                     Frith Farms DeSoto
    Reid Allen Jones                         Parish Interest
                                             Partnership, L.L.P


Maribeth Lee Gamble                          In Proper Person,
                                             Appellee

* * * * *

Before PITMAN, McCALLUM, and THOMPSON, JJ

**McCALLUM, J.**

The case before us is a boundary dispute centering on an acquisitive prescription cause of action. Although the parties involved own large, adjacent tracts of property, the area in conflict is a small strip of land that borders the property of Frith Farms DeSoto Parish Interest Partnership, L.L.P., whose predecessor in interest was D.C. Frith and Frances Holmes Frith (collectively referred to as "Frith"). VJ Ranch II, L.L.C., whose predecessor in title was James W. Lee and Virgie Lanell Free Lee (collectively referred to as "Lee"), has record title to the disputed property. The trial court found that Frith proved their case for 30-year acquisitive prescription and granted judgment in their favor.

Although Lee cited seven errors on appeal, after a review of the arguments, Lee essentially stands on five. Lee alleges that the court erred with regard to multiple findings of fact, including the following: (1) D.C. Frith built a fence on the disputed land before James W. Lee purchased the land; (2) James W. Lee's alleged permission to D.C. Frith to build the fence and use the land was not credible; (3) the Frith pasture leases prove its corporeal possession of the disputed land; and (4) James W. Lee's alleged use of a dirt road on the disputed property and the Lee mineral leases did not interrupt Frith's adverse possession.

Lee alleges that the trial court erred in finding that Frith had continuous, uninterrupted, peaceable, public and unequivocal possession of the disputed area, within a visible barrier, in order to acquire ownership by acquisitive prescription. Additionally, Lee argues that the trial court erred in making any determination as to a 2005 timber dispute because Frith had waived that claim by stipulation.

For the following reasons, we affirm the trial court's judgment.

**FACTS**

The parties involved are significant landowners of adjoining immovable property. Frith acquired its land through purchases by its predecessor in interest, D.C. Frith, from 1961 to 1968. Lee acquired its property through acquisitions made by its predecessor in interest, James W. Lee, in July, 1974. The disputed area is an approximately five-acre strip of land composing part of the property to which Lee has record title. It snakes along the border of the property to which Frith has record title.

As early as 1966, a fence was erected by D.C. Frith. The fence, however, does not separate the land along the title boundary. Located on the Lee land, the fence allowed the Frith cattle operations to pasture its cows on the Lee land, within the five-acre contested area. The parties dispute at what time the fence was first erected, the maintenance of the fence and whether Lee gave permission to a Frith ancestor to build the fence.

Prior to 1974, Frith raised cattle on its land and allowed the cattle to use what would become the Lee property up to the fence line. In 1974, Frith sold its cattle operations and leased its land to the purchaser to be used in connection with the same. The lease agreement was renewed four subsequent times. Although the written leases did not include the disputed Lee property by description, all agree the cattle roamed the disputed area up to the fence line. The pasture leases continued until 1989, when Frith ceased all cattle operations. Frith has continued to use the property for fishing, camping and hunting, except for a period of interruption in 2005.

In 2005, James W. Lee harvested timber off the disputed area. At that point, Frith had used the disputed area for cattle operations, hunting, fishing,

2

and camping continuously for over 30 years. James W. Lee testified that he had never disturbed or removed the fence dividing the use of the tracts until the 2005 timber harvest. He further admitted that Frith had used the property in question for more than 30 years, although he contends that Frith was granted use of the property by his permission. James W. Lee alleges permission was given to D.C. Frith, the Frith predecessor in title, in the mid-1970s, at which time he permitted D.C. Frith to erect the fence and use the property for cattle. As will be discussed infra, the trial court found James W. Lee was not credible with regard to the factual basis of the alleged meeting.

After the 2005 timber harvest by Lee, Frith filed its first petition relative to the essential matters of this disagreement. That original petition was abandoned by operation of law. Frith then filed a second petition asserting a cause of action based on acquisitive prescription, together with a request for damages associated with the 2005 timber harvest. Subsequently, Frith waived by stipulation any cause of action with regard to the 2005 timber harvest and, instead, sought a determination as to the ownership of the disputed property and requested the court to fix the boundary. The trial court found in favor of Frith, determining it had acquired ownership of the disputed area of land by way of 30-year acquisitive prescription. Lee then appealed that decision, placing the matter before us for review.

## DISCUSSION

"Ownership and other real rights in immovables may be acquired by the prescription of thirty years without need of just title or possession in good faith." La. C.C. art. 3486. Comment (b) to article 3486 states, "The attributes of possession for the prescription of thirty years are the same as

3

those set forth in Article 3476, *supra*." Article 3476 of the Louisiana Civil Code states the following:

> The possessor must have corporeal possession, or civil possession preceded by corporeal possession, to acquire a thing by prescription.
>
> The possession must be continuous, uninterrupted, peaceable, public, and unequivocal.

The following comments and definitions are instructive as to the law on this matter. Comment (b) to article 3476 states, "'Corporeal possession' is defined in Article 3425, *supra*. 'Civil possession' is defined in Article 3431, *supra*." "Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing." La. C.C. art. 3425. "Once acquired, possession is retained by the intent to possess as owner even if the possessor ceases to possess corporeally. This is civil possession." La. C.C. art. 3431. Comment (e) to article 3476 states, "A possessor is one who possesses for himself. The exercise of possession over a thing with the permission of or on behalf of the owner or possessor is precarious possession."

"Whether or not disputed property has been possessed for 30 years without interruption is a factual issue and will not be disturbed on appeal absent a showing of abuse of discretion or manifest error." *Brunson v. Hemler*, 43,347 (La. App. 2 Cir. 8/13/08), 989 So. 2d 246, 250, *writ denied*, 2008-2297 (La. 12/12/08), 996 So. 2d 1119; *Greengrove Missionary Baptist Church v. Cox*, 42,418 (La. App. 2 Cir. 9/19/07), *writ denied*, 2007-2064 (La. 12/14/07), 966 So. 2d 537; *Bowman v. Blankenship*, 34,558 (La. App. 2 Cir. 4/4/01), 785 So. 2d 134, *writ denied*, 01-1354 (La. 6/22/01), 794 So. 2d 794. "When there are two permissible views of the evidence, the trial court's choice between them cannot be manifestly erroneous or clearly

4

wrong." *Hamel's Farm, L.L.C. v. Muslow*, 43,475 (La. App. 2 Cir. 8/13/08), 988 So. 2d 882, 887, *writ denied*, 2008-2431 (La. 1/30/09), 999 So. 2d 754); *Stobart v. State through DOTD*, 617 So. 2d 880 (La. 1993).

> Ownership of immovable property may be acquired by prescription of 30 years without the need of a just title or good faith. … However, in the absence of a title, possession extends only to that area which has actually been possessed. … This requires proof of inch by inch possession or possession within enclosures; it is also referred to as *pedis possession*, foot possession.

*Hamel's Farm, L.L.C.*, 988 So. 2d at 894.

THE FENCE AND THE MEETING

Counsel for both parties introduced evidence related to the fence, including the testimony of surveyors. At the time of its decision, the trial court was in possession of numerous maps and aerial photos from different years, as well as transcripts of testimony on the matter of the existence and location of the fence. The trial judge had additional evidence as to the maintenance and use of the fence during its existence. The trial court concluded that the fence had been established in or before 1966, that the fence was maintained and extant until Lee's 2005 harvesting of timber on the disputed property, and that the fence was strong proof that Frith used the disputed land for more than 30 years for cattle operations, hunting, fishing and camping. The trial court further found that the evidence and testimony showed that the fence was a maintained, visible boundary of the land in question. We can find no manifest error with the trial court's judgment.

James W. Lee alleged that after he had purchased his property in the middle of 1974, he held a meeting with D.C. Frith, who owned the adjoining property. He testified that he gave D.C. Frith permission to build the fence

and use the disputed area. Lee essentially argues that any possession exercised by Frith has been as a precarious possessor only.

James W. Lee originally testified that the alleged meeting took place in 1975 or 1976. When confronted with the information that D.C. Frith died in early 1974, he changed his testimony. He then testified, without corroborating evidence, that he may have purchased his property before the death of D.C. Frith or that the meeting took place earlier in 1974. However, even the new dates supplied by James W. Lee were dates that were subsequent to the death of the Frith ancestor. The trial court discounted the testimony of Mr. Lee. The trial court properly weighed the evidence and testimony and, based on James W. Lee's lack of clarity and accuracy, made a reasonable conclusion as to the weight and credibility to be afforded that evidence and testimony. Trial judges are in a unique and superior position to determine the credibility of witnesses and we find no manifest error in the trial judge's factual findings.

THE PASTURE LEASES

Lee argues that because the leases did not contain the legal description of the disputed land, they are insufficient to prove possession. Leasing the surface of property which one does not own by title is an overt and unambiguous act of possession. *See Tilley v. Unopened Succession of Howard*, 43,013 (La. App. 2 Cir. 2/20/08), 976 So. 2d 851, *writ denied*, 2008-0820 (La. 2008), 983 So. 2d 922. Specifically relevant to our deliberations, leasing land for the purpose of pasturing cows is an overt and unambiguous act of possession. *Id.*

The pasture leases in question, although not specifically containing the land in dispute by description, clearly allowed the third-party cattle

6

operators to have cattle on the disputed property. At the same time as the execution of the original lease, Frith sold its cattle and ranch equipment to the leaseholder. The lease also required that the lessee maintain the fence in question. Lee does not dispute that the cattle operations and pasturage of the cattle occurred on the disputed property. As the evidence shows, kine will dine from lea to lea unless their meanderings are circumscribed by physical barriers. Cattle do not observe impalpable legal boundaries; they go where they please, until a physical boundary restrains them. The nature and extent of the use of the subject property remained the same.

The trial court was not manifestly erroneous in deciding that the leases were proof of the continued possession of the disputed land by Frith. The land was enclosed by the visible boundary of the fence and used by the lessees of Frith. The lease required the maintence of the fence in question that existed on the Lee property. Furthermore, Frith sold its entire cattle operations to the lessee, indicating that Frith and the lessee intended that the cattle operations be maintained as they had been under Frith management. The trial court was not manifestly erroneous to find that the pasturing of the cows extended over the land in dispute to the fence in question. The leases were evidence of the continued possession of the disputed land.

THE DIRT ROAD

James W. Lee further argues that his use of a dirt road that allegedly existed over the disputed area interrupted the possession of the property by Frith. Again, the trial court discounted his allegation and testimony. James W. Lee testified that the first time he entered through the fence, with the intent to dispossess Frith of the property, was in 2005 when he harvested the

timber.[1]  Furthermore, the trial court noted that James W. Lee testified that he never intended to interrupt the possession of the property by use of the road in question.  Mr. Lee indicated that Frith had permitted him to use the dirt road.  Therefore, it was a reasonable conclusion by the trial court that Lee did not interrupt the possession of the property by his alleged use of the dirt road in question.

THE MINERAL LEASES

Lee additionally argues that the mineral lease contracts that it made with third parties interrupted the adverse possession of Frith.  A mineral lease, as a disturbance in law, as opposed to a disturbance in fact, does not interrupt possession.  Louisiana Code of Civil Procedure Article 3659 defines a disturbance in fact and in law.  The statute states:

> Disturbances of possession which give rise to the possessory action are of two kinds: disturbance in fact and disturbance in law.
>
> A disturbance in fact is an eviction, or any physical act which prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly, or which throws any obstacle in the way of that enjoyment.
>
> A disturbance in law is the execution, recordation, registry, or continuing existence of record of any instrument which asserts or implies a right of ownership or to the possession of immovable property or of a real right therein, or any claim or pretension of ownership or right to the possession thereof except in an action or proceeding, adversely to the possessor of such property or right.

In *Richardson v. Hesser*, 516 So. 2d 1288, 1292-93 (La. App. 2 Cir. 1987), this Court considered a similar argument.  In *Richardson*, the title owner argued "that the existence of the [title owner's] mineral lease in the

---

[1]    At the time of the 2005 timber harvest, 30 years of possession by Frith had already accrued as early as 1996.

8

public records since 1979 was such a disturbance that the [adverse possessor] did not possess 'quietly and without interruption' after the time, as required by Art. 3658(2)." *Id.* However, this Court held that "[i]t is well settled that the mere execution and recordation of a mineral lease on the property, without more, constitutes a disturbance in law but not fact, and did not interrupt the [adverse possessor's] corporeal possession." *Id.*; *Graham v. McRae Exploration, Inc.*, 493 So. 2d 705 (La. App. 2 Cir. 1986). Therefore, the mineral leases did not interrupt Frith's corporeal possession.

ACQUISITIVE PRESCRIPTION

The errors alleged by Lee constitute an attack of the overall finding and judgment of the trial court that Frith had proved its cause of action for 30-year acquisitive prescription. After reviewing the evidence, testimony and the law before it, the trial court made a factual determination that was reasonable and well-reasoned.

"The intent to possess as owner may be inferred from all the surrounding facts and circumstances." *Livingston v. Unopened Succession of Dixon*, 589 So. 2d 598, 602 (La. App. 2 Cir. 1991); *Williams v. McEacharn*, 464 So. 2d 20 (La. App. 2 Cir. 1985). "Openly maintaining property to which one does not have record title by raising crops or using the property for pasturage is evidence of intent to possess the property as owner." *Id.* "If a party and his ancestors in title possessed for 30 years without interruption, within visible bounds, more land that their title called for, the boundary shall be fixed along these bounds. … Such a title holder may attain the 30-year possessory period which is necessary to perfect prescriptive title in the absence of good faith and just title by 'tacking' on the possession of the ancestor in title." *Id.* at 603-604.

9

In *Livingston v. Unopened Succession of Dixon*, supra, this Court considered a similar, if not factually identical, case. This Court held that even when the landowner had no legal title to the adjoining property, raised cattle and crops on the land, and frequently used the land for camping and hunting for more than 30 years, he acquired ownership to that land. *Id.* Furthermore, in *Livingston*, a similar factual circumstance existed where a fence existed on the adjoining property. The fence did not divide the property at the legal title boundary, instead running through the adjoining property, allowing the possessor to use the disputed land for his cattle and other enjoyment. *Id.*

The trial court benefited from the voluminous evidence before it as a guide to a thoughtful, fact-based decision. Judge Adams methodically considered the photographic evidence, the testimony of the parties, and the testimony of the expert witnesses and then made a well-reasoned decision as to the factual existence of the fence and when the fence was constructed. The court found that Frith had maintained a continuous, peaceable, public and unequivocal possession of the disputed area for more than 30 years. The court further found that Lee did not interrupt the possession of Frith during that time period. In consideration of the entirety of the evidence, testimony and the trial court's findings and reasons, we find no manifest error. The trial court made a reasonable judgment based on the evidence introduced at trial.

THE TIMBER HARVEST

Finally, Lee contends that that trial court erred in making any determination with regard to the 2005 timber harvest. Frith waived any

actions related to the 2005 harvest of timber and we, therefore, find that issue moot.  Thus, no action relative thereto by us need be taken.

## CONCLUSION

The judgment of the trial court is **AFFIRMED**. All costs of this appeal are assigned to the appellant.